## STEBBINS *v.* ANTHONY.

(*Supreme Court of Colorado, April Term, 1880.*)

THE WRIT OF ERROR lay from the Supreme Court to the probate court, from 1863 up to the time of the adoption of the constitution of the state, by virtue of the act of Congress, with the exception of the interval from May 4, 1870, to July 14, 1870.

STATUTORY ENACTMENTS were not essential to carry into effect the authority conferred by the act of Congress to issue the writ and process thereunder.

STONE, J.   The proposition laid down by counsel, in his brief in support of the motion, referring to the several acts of the Territorial Legislature respecting the probate courts, together with his interpretation of the saving clauses in the repealing statutes of the General Laws and in Code, are undoubtedly correct; but the conclusions drawn therefrom by counsel are untenable, as being in conflict with the paramount law of the organic act as amended, and the constitution of the state.

The act of Congress of March 2, 1863, amendatory of the organic act, declares that "writs of error, bills of exceptions, and appeals shall be allowed from the final decisions of said district and probate courts to the Supreme Court, under such rules and regulations as shall be prescribed by law."   It is true, as counsel contends, that the territorial legislature conceiving ·that it was necessary to enact by statute a mode of carrying into effect this provision of the organic act, did, to a limited extent, so enact, and afterwards repealed the same with respect to probate courts; but it is equally true that in so far as the legislature attempted to deny or take away a right of power conferred by the act of Congress referred to, such legislation was in contravention of the organic law.   This act continued in force until May 4, 1870, when it was repealed, but was re-enacted July 14, 1870; so that with the exception of this short interval of seventy days between the dates just mentioned, the writ of error lay from the Supreme to the probate court by virtue of the act of Congress aforesaid, from 1863 up to the time they were superceded by the constitution of the state.

The only question that could arise upon the authority to issue the writ is whether legislation was not required to carry into effect the authority conferred by the act of Congress, coupled with

the clause "under such regulations as shall be prescribed by law."
This very question was raised in the case of *Liss* v. *Wilcoxen*, 2 Col.,
where the subject is thoroughly discussed in the opinion of Chief
Justice Hallett, and it was held that statutory enactments were
not essential to carry into effect the authority conferred by the
act of Congress to issue the writ and proceed thereunder, inas-
much as the practice was well enough regulated by the common
law, under which the writ originated. The court say in that
opinion: "The office of the writ of error is fully explained by
the common law, and Congress having authorized this court to
issue it, the jurisdiction to hear and determine cases, brought into
this court by means of this writ, is complete without further ac-
tion of the legislative assembly.        *       *       *       The writ
of error was framed and fully equipped for service by the com-
mon law, in which condition it is believed that it has been trans-
mitted to us."

The act of Congress of July 14, 1870, which we have referred
to as containing the writ, declares "that writs of error shall be al-
lowed from any decision of a probate court to the Supreme Court
of the territory in the same manner they were allowed before
the passage to the act" of May 4th; and the court in the case
cited, upon this say further:    "If it should be conceded that the
practice prior to May 4, 1870, was unwarranted, it must also be
conceded that it was revived and sanctioned by the latter act, so
that if we are wrong in supposing that a perfect writ was given
by the act of 1873, we cannot be wrong in saying that it now
exists."

The constitution of the state took the place of the organic law
of the territory in continuing this writ to the probate court, and
all rights under the organic act were carried over to the courts of
the state by the second saving clause in section one of that part
of the constitution denominated the schedule, so that there can
be no doubt upon the question in the case before us. Nor could
a different rule be applied to the probate court of Jefferson
county, by reason of any territorial legislation affecting the writ
of error; for, as we have seen, by virtue of the acts of Congress,
and the common law which we adopted, and which carried with
it as an incident of practice, the writ of error as an existing com-
mon law process "fully equipped for service," so that with the
exception of the short interval mentioned there has been no time

9

from 1863 to the present when the writ of error did not lie from the Supreme to the probate court of any county in the territory or state.

The cases of *Willoughby* v. *George*, 4 Col., 22, and *Lundin* v. *Kansas Pacific Railroad Company, Ib.*, cited by the learned counsel in his quite ingenious argument as authority for constituting the proviso in section 447 of the Code, as he expresses it, the "solitary *tabula in naufragio*" by which the writ was preserved in cases pending before the Code took effect, refer only to district and not to probate courts; the writ to the latter court, although not to the former, being shielded from the Code by the express terms of the constitution. To this extent the constitution itself becomes a saving "*tabula*" in the destroying *naufragium* in which the Code sought to engulf the common law.

The motion to dismiss the writ will be overruled.