## THE PEOPLE v. RICHMOND ET AL.

1. STATUTE — ESTABLISHING UNCONSTITUTIONALITY OF.— The unconstitutionality of a statute must be established beyond a reasonable doubt. It is not enough to show that the act is obnoxious to some unexpressed intent or spirit supposed to pervade the constitution.

2. LEGISLATIVE AUTHORITY — LIMITATION.— The constitution operates upon the legislature purely as a limitation; that body possesses plenary authority, except as expressly or by clear implication denied in the constitution.

3. COURT OF REVIEW — CREATION OF.— Section 1, article 6, of the constitution, as amended, recognizes the legislative right to create a court of review, but no such court can be clothed with final jurisdiction co-ordinate with the supreme court.

4. COURT OF APPEALS — CONSTRUCTION OF ACT CREATING.— The court of appeals created by the act under consideration is subject to the superintending control, and guided by the decisions, of the supreme

court. In all cases that might under any circumstances go in the first instance to the supreme court, the judgment of the court of appeals is still subject to review by the superior tribunal.

5. SUPREME COURT DECISIONS — WHEN THE HIGHER AUTHORITY.— The court of appeals should voluntarily yield its judgment in case of difference of opinion upon the same legal propositions to that of the higher tribunal. If that court, however, insists upon a contrary view as to the same question in the same case, an appropriate remedy will be found to enforce the law as declared by the supreme court.

6. IN WHAT SUPREMACY OF SUPREME COURT CONSISTS.— The supremacy of the supreme court appears in the paramount force and authority of its adjudications, not in the extent of its jurisdiction or the amount of its business.

7. CONSTITUTIONAL JURISDICTION OF SUPREME COURT.— The constitution confers and defines the jurisdiction of the supreme court, but does not inhibit the legislature from regulating, to some extent, the quantum of its business by reasonably contracting or enlarging the limits of such jurisdiction. The constitutional policy is not to specify absolutely the extent and boundaries of the jurisdiction of all courts, but to allow a large legislative discretion in connection therewith.

8. RIGHT OF HEARING IN SUPREME COURT.— The citizen has no natural or inalienable right to a hearing in the supreme court. If this right exists, it must be deduced from a constitutional guaranty.

9. BILL OF RIGHTS CONSTRUED.— Section 6 of the Bill of Rights simply confers upon each individual the right to an intelligent, impartial and speedy judicial hearing and determination of his grievances. It does not authorize him to invoke the jurisdiction in a given case of all the courts of the state.

10. APPEALS TO SUPREME COURT.— Appeals to the supreme court remain creatures of statute, and in the absence thereof do not exist.

11. WRITS OF ERROR, STATUTORY AND CONSTITUTIONAL REGULATION.— Writs of error from the supreme court may be forbidden by statute, unless preserved by the constitution. But that instrument only saves this proceeding so far as ordinary appellate purposes are concerned to review the judgments of county courts.

12. SAME — ORIGINAL AND APPELLATE JURISDICTION.— The writ of error is an original writ; it may be included in the original writs authorized by section 3, article 6, of the constitution. But the writs designated in that section are confined to original jurisdiction, and cannot be used in aid of ordinary appellate authority.

13. END OF LITIGATION WITHIN LEGISLATIVE DISCRETION.— The legislature may say within reason at what particular stage or in what particular court a specified kind of ordinary litigation shall end.

14. ORIGINAL AND APPELLATE JURISDICTION OF SUPREME COURT.— Section 2, article 6, of the constitution grants appellate jurisdiction

to the supreme court, but does not lodge in that tribunal all jurisdiction of the kind or jurisdiction over all litigation. That court is essentially a court of review. Its superintending control, original jurisdiction and duty of answering executive and legislative questions are secondary functions.

15. SUPERINTENDING CONTROL OF SUPREME COURT.— The superintending control given by section 2, article 6, aforesaid, refers primarily to courts, not to parties or cases. It was not designed for ordinary appellate jurisdiction, but to keep subordinate courts within bounds and to insure the harmonious working of the judicial system.

16. EXCLUSIVE JURISDICTION.— When a constitution confers jurisdiction over a particular subject upon one court and not upon another, the jurisdiction thus conferred is exclusive.

17. UNIFORMITY OF LAWS PERTAINING TO COURTS.— Section 28, article 6, of the constitution was not expected to insure uniformity in judicial decisions. Its purpose was to require that laws pertaining to the organization, jurisdiction, etc., of courts, also that the legal force and effect of judicial judgments should be uniform.

18. APPELLATE COURT ACT CONFORMABLE TO BILL OF RIGHTS.— Section 6 of the Bill of Rights provides for the administration of justice without delay. And under the circumstances, the act creating the court of appeals is in effect a legislative effort to obey this mandate.

19. REVOLUTIONARY INTENT OF LEGISLATION NOT PRESUMED.— A legislative attempt to interfere with the existence or supremacy of the supreme court to change the nature of its jurisdiction and duties, or to take away its utility, would be declared void. But the supreme court will not indulge the judicial presumption that the legislature may be guilty of such revolutionary conduct.

### Original Proceeding in Nature of Quo Warranto.

THE eighth general assembly adopted an act creating a court of appeals. The essential features of this act are as follows:

The court is made a court of record with appellate jurisdiction only, and is authorized to issue the necessary writs and other processes in aid of such jurisdiction. Its judges, three in number, are to possess the same qualifications and to receive the same salary as the judges of the supreme court. It is provided with a clerk and bailiff; and its decisions are to be reported as are those of the supreme court, but in separate volumes.

The act forbids the suitor a review, except upon error to county courts, by the supreme court in civil cases where the amount of the final judgment is $2,500 or less, and where the controversy does not relate to a franchise or freehold or require the construction of a provision of the constitution of the state or of the United States. In all such cases, however, determined in trial courts of record, an appeal lies to, or a writ of error from, the court of appeals, the judgment of that court being final.

But the appellate jurisdiction of the court of appeals is also extended to all other civil cases, and to all criminal cases not capital. Its decisions, however, in the cases, civil and criminal, last mentioned, are made reviewable in the supreme court by appeal and by writ of error.

Respondents, having been duly commissioned judges of the court of appeals, appointed the necessary officers, organized the court and entered upon the discharge of the judicial duties pertaining thereto. The present proceeding was instituted for the purpose of testing the constitutionality of the act. It is submitted on a general demurrer to the return or answer of respondents pleading the statute and their appointment thereunder.

Messrs. L. S. DIXON and WELLS, MACON & FURMAN, with Attorney-General MAUPIN, for the people.

Messrs. WILLARD TELLER, D. V. BURNS, CALDWELL YEAMAN and W. S. DECKER, for respondents.

Messrs. ROBINSON & LOVE, *amici curiæ*.

CHIEF JUSTICE HELM delivered the opinion of the court.

No illegality or defect in the manner of respondents' selection for the office in question is asserted, nor is any personal disqualification relied on; therefore, our investigation is necessarily confined to the objections so ably argued, touching the constitutionality of the court itself.

Authorities need not be cited in support of the proposition that he who asserts the unconstitutionality of a statute must establish beyond a reasonable doubt the conflict or inconsistency which renders it void; it is not enough for him to vaguely insist that the act questioned is obnoxious to some unexpressed intent or spirit supposed to pervade the constitution; he must point out the specific provision or provisions of that instrument transgressed. Another elementary rule to be borne in mind throughout the following discussion is that the constitution operates upon the lawmaking branch of the government purely as a limitation; and that the legislature possesses plenary authority in the enactment of laws except as such authority is expressly, or by clear implication, therein denied.

Section 1, article 6, of the constitution declares that: "The judicial power of the state, as to matters of law and equity, except as· in this constitution otherwise provided, shall be vested in a supreme court, district courts, county courts, justices of the peace, *and such other courts as may be provided by law.*" This section clearly recognizes two kinds of courts, viz.: *First,* those established by and expressly enumerated in the constitution itself; and *second,* such other courts as the legislature may at its pleasure from time to time create.

It will be observed that the character and jurisdiction of the statutory courts to be. thus created are not specified. The provision contains no command or inhibition touching these subjects. For aught that appears therein the legislative will is omnipotent in the exercise of the power mentioned. When the constitution was first adopted, the clause in question read, "and such other courts as may be created by law *for cities and incorporated towns;*" but by constitutional amendment in 1886, the phrase, "for cities and incorporated towns," was expunged. This change was evidently made with the deliberate purpose of removing the single limitation upon legislative discretion theretofore existing. There is nothing in the language now employed to

justify the inference that additional trial courts alone may be provided by law. The legislature, in our judgment, is by this section affirmatively invested with authority to create an intermediate court of review. And we find no *express* constitutional limitation of the jurisdiction, territorially or otherwise, that may in the legislative wisdom be conferred upon a court of this kind.

If, therefore, the act before us is unconstitutional, it is because constitutional provisions touching other courts or subjects inhibit, *by implication*, the jurisdiction, in whole or in part, conferred upon the court of appeals. Such is the position taken by relator and the learned counsel who appear with him on behalf of the people. It is asserted that a part at least of the authority given the court of appeals undermines the constitutional supremacy and jurisdiction of the supreme court, and is therefore as fully prohibited by the constitution as if express inhibiting words were found therein. If this contention be correct, it is either because a constitutional right of the citizen is denied, or because some constitutional provision relating to the supreme court or its jurisdiction is invaded.

There can be no doubt about the supremacy of the supreme court. This court is placed by the constitution at the head of the judicial system of the state; from its judgments there is no appeal to any other state tribunal, and its determinations are binding upon the rest of the state judiciary. The legislature cannot interfere with its existence or supremacy; nor can that body alter the *nature* of its jurisdiction and duties. And it follows of course that, without change in the fundamental law, the legislature cannot create a court of co-ordinate final jurisdiction. *In re Court of Appeals*, 9 Colo. 623; *In re Court of Appeals*, 15 Colo. 578. Every tribunal established by statute, whether clothed with original or appellate powers, must, like the trial courts expressly named in the constitution, be inferior to the supreme court, subject to its "superintending control," and guided by its decisions upon questions determined in the exercise of its appellate authority.

The opinion above cited from 9 Colo. seems to be misapprehended, and such misapprehension justifies an explanatory word in passing. The legislative act at that time under consideration provided for a court which, without consent of parties, should have final co-ordinate jurisdiction with this court in cases then upon its docket. That opinion does not declare that *all* appellate power is lodged in the supreme court; nor does it undertake to define the boundaries of the jurisdiction of this court in that regard; its clear import is that in such cases as are, by virtue of the constitution and laws consistent therewith, retained within the reviewing authority of this tribunal, the judgment of no other court can be final. And upon intelligent comparison, it will be found that no inconsistency exists between that opinion and the opinion referred to in 15 Colo. or the views hereinafter expressed.

But the present statute does not undertake to create a tribunal superior to, or co-ordinate with, the supreme court. The court of appeals is given no original jurisdiction whatever, and no independent superintending control over other courts; neither is it authorized to answer executive and legislative questions. Its decisions in all civil actions relating to franchises or freeholds, or where a constitutional question, state or federal, is involved, or where the amount of the judgment in the trial court exceeds $2,500, may be reviewed by the supreme court. Nor are any of its judgments final in causes from the fifty-five county courts, *regardless of the subject-matter or amount* in controversy, in the sense that a review of such judgments may not be had in this tribunal. And while some ambiguity exists in relation thereto, we are of the opinion that the statute contemplates a reconsideration by this court of its conclusions in criminal causes when demanded by the convicted party. Every case that, within the purview of the constitution and statute, might under any circumstances come in the first instance to this court for review, may still be brought here for final adjudication.

In this connection it is important to remember that a

material distinction exists between the supremacy of the su-
preme court and certain features of its jurisdiction.   As has
been well said, the supremacy of such a court " is to be
found, not in the  extent of  its jurisdiction, or the amount
of its business, but in the paramount force and authority of
its adjudications,— a  force acting  directly in  controlling,
without being controlled by, other tribunals,— an authority
operating indirectly, from the respect and deference due to
the highest  tribunal  known  to the  constitution  and  the
laws."   *Sharpe v. Robertson,* 5  Grat. 518.   While the con-
stitution confers and defines the jurisdiction of the supreme
court, it does not, as we shall presently see, forbid the legis-
lature from  regulating to some  extent the  quantity of  its
business by reasonably contracting  or  enlarging the limits
of the exercise of such jurisdiction  as the exigencies of the
public welfare may require.  An extensive legislative power
to regulate the exercise of judicial authority is an impera-
tive necessity.   A constitutional provision unalterably de-
fining and fixing in  all respects such jurisdiction would be
a  serious misfortune.   The constitutional policy seems to
have been, not to  specify absolutely the extent and bound-
aries of the jurisdiction of all the courts, but to allow a large
legislative discretion, so that the varying demands and the
ever-changing  necessities of the  people  may from time to
time be adequately provided for.

With these general observations, we proceed to consider
the remaining constitutional provisions to which our atten-
tion has been specifically invited.

If, as  relator  contends, every  suitor  is  entitled  to be
heard by  the  supreme court  in  every  case, it follows of
course that the  judgment of no  other  court can be  final;
and therefore the act, in so far as in certain cases it confers
final  jurisdiction upon the  court of  appeals, is void.   But
the citizen has no natural or  inalienable right to a  hearing
in the supreme court.  If the right to such a hearing exists,
it must be  deduced  from  some  constitutional  guaranty.
The constitution will, however, be searched in vain for any

provision that expressly or by fair implication contains this guaranty. The declarations in section 6 of the Bill of Rights, "That courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and that right and justice shall be administered without sale, denial or delay," simply bestow upon each individual the right to an intelligent, impartial and speedy judicial hearing and determination of his grievances. They were not intended to confer the privilege of having each controversy tried by every court of the state; nor was it the purpose of this provision to declare, irrespective of legislative direction, that the litigant should be permitted to invoke the jurisdiction of any particular court or number of courts. Such a construction of the language employed would often in practice be injurious to the suitor himself, as well as detrimental to the public welfare. The provision is, as already observed, satisfied when the suitor has an opportunity to secure a speedy and impartial judicial settlement of his controversy; and this is especially true, when, as under the present act, such settlement includes a hearing in both an original and an appellate tribunal.

The foregoing conclusion is not affected by any constitutional declaration concerning the manner of invoking the appellate jurisdiction of the supreme court. The litigant cannot, as a matter of right, assert that he will come to this tribunal by appeal, for such appeals remain creatures of statute, and, in the absence thereof, do not exist. He cannot claim a vested right to bring his case to this court by writ of error; for while this writ is in most cases a writ of right at the common law, it may by statute, unless the constitution forbids, be limited or abolished altogether. *Haines v. The People*, 97 Ill. 161; *Willoughby v. George*, 4 Colo. 22; *Stebbins v. Anthony*, 5 Colo. 273; *Webster, Assignee, v. Gaff*, 6 Colo. 475. But, save as to judgments of county courts, the writ of error has received no express constitutional recognition for ordinary appellate purposes. The declaration in section 23, article 6, that writs of error

shall lie to review all final judgments of the county court, does not, as we construe it, forbid a legislative enactment authorizing writs of error to the judgments of other inferior courts of record. But it is conclusive of the proposition that the constitutional purpose was to leave the existence and use of this writ, with the exception mentioned, subject to legislative control. The provision in effect declares that, though the legislature may abolish the writ of error to review the final judgments of other courts, the right to have those of the county court considered in this tribunal shall be inviolate. Were it important to account for the distinction thus made, ample reason exists in the fact that the estates of deceased persons and the interests of minor heirs, often involving adjudications and final judgments, are committed so largely to the custody of county courts; also, in the further fact that the judges of such courts are not required to be learned in the law, many of them not even being licensed practitioners.

It is true, as counsel for the people contend, that the writ of error is an original writ; and it may possibly be true, as they also assert, that it is fairly included within the " other original and remedial writs " referred to by section 3, article 6, of the constitution, which the supreme court is authorized to issue. But, as we have already held, the jurisdiction conferred by said section 3 is original, in contradistinction to the appellate authority given by the preceding section; the original writs mentioned are not to be used in connection with or in aid of ordinary appellate jurisdiction, but for the purpose of instituting original causes or proceedings. *Wheeler v. N. C. I. Co.*, 9 Colo. 248.

Neither of the foregoing constitutional provisions, aside from the exception mentioned, fairly inhibits the legislature from saying, within reason, at what particular stage or in what particular court a specified kind of ordinary litigation shall end. It would seem that when the suitor has had the full, fair and impartial judicial hearing guarantied by section 6 of the Bill of Rights, the constitutional duty of the state is performed, and he ought not to complain.

But our attention is further invited to section 2, article 6, of that instrument: "The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law." It is insisted that this section lodges final appellate jurisdiction over *all cases* in the supreme court, and, therefore, that the legislative attempt to confer such jurisdiction upon the court of appeals in any class of cases is necessarily a nullity.

We answer that, in the first place, since the constitution authorizes the legislature to create "other courts," such power necessarily carries with it authority to give the courts created a share in the trial of controversies that would otherwise be disposed of by the tribunals expressly named; moreover, the very words of section 1, above quoted, lodge "the judicial power of the state" in the courts that may afterwards be provided by law, as well as in those enumerated by name. Secondly, we reply, that while section 2 clothes the supreme court with appellate jurisdiction, such jurisdiction is not exclusive. True, the intent is clear to make this court essentially a court of review; the word "only," coupled with the other words employed, plainly indicates a purpose to render its primary and principal powers appellate; its superintending control over other courts and its limited original jurisdiction, together with its anomalous duty of answering executive and legislative questions, while functions of great importance and value, must be regarded as secondary. It would be idle, however, to argue that the supreme court absorbs all appellate jurisdiction; and it would be scarcely less idle to say that section 2 gives it a monopoly *for purposes of review*. We are not at liberty to transpose the adverb and make the constitution read: "The supreme court *only* shall have appellate jurisdiction;" while the language as it is written, "shall have appellate jurisdiction only," falls far

short of declaring that it shall have such jurisdiction *in all cases*. This expression operates both as a grant and a limitation; it confers appellate authority, and at the same time forbids the exercise of original jurisdiction, save in the excepted cases; it specifies the *kind*, not the *quantum*, of jurisdiction, and is not inconsistent with the lodgment of power in some other court to review finally enumerated classes of cases. Care was taken to provide that the appellate authority of the court shall be co-extensive with the territorial boundaries of the state, and had it been the intention to extend and forever continue its final appellate power over *all litigation*, such intention would have been expressed. The constitution declares that district courts "shall have original jurisdiction of all causes both at law and in equity;" but while every suitor is thus authorized to bring his suit in that court, no one ever supposed that this declaration operates to prevent vesting original jurisdiction of civil causes also in trial courts which the legislature may see fit to create.

If the claim of counsel for respondents be correct (a matter we do not determine), that the last clause of section 2, viz., "under such regulations and limitations as may be prescribed by law," applies to the appellate jurisdiction of the court, this feature of the provision reinforces the above conclusion. For while the expression relates principally to procedure, the word "limitations" is comprehensive enough to include a legislative declaration as to the character or amount of a judgment that can be thus reviewed.

It is hardly necessary to add that the "superintending control" given by the constitutional provision now under consideration refers primarily to courts, not to parties or cases; its purpose is to keep the courts themselves "within bounds," and to insure the harmonious working of our judicial system; it was not designed to secure the review of judgments in connection with ordinary appellate jurisdiction; and in so far as the rights of suitors in particular causes may be affected, the effect is incidental purely. To

say that the " superintending control" was intended to include ordinary appellate power is to render the preceding clauses superfluous in so far as they constitute a grant of such power.

The foregoing views are not inconsistent with the principle also relied on by relator, that when a constitution confers jurisdiction over a *particular subject-matter* upon one court and not upon another, the jurisdiction thus conferred is exclusive. That principle is simply inapplicable. The provision before us grants general appellate supervision; it specifies no " particular subject-matter."

Section 28, article 6, of the constitution declares that " all laws relating to courts shall be general and of uniform operation throughout the state; and the organization, jurisdiction, powers, proceedings and practice of all the courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts severally, shall be uniform." The court of appeals created by this statute cannot be regarded as belonging to the same class or grade with any of the trial courts; while, as we have seen, it is inferior to the supreme court. There being no other court of a like class or grade, and its powers being exercised uniformly throughout the state, there is no disobedience of the constitutional command relating to judicial uniformity. It may be that, as counsel suppose, the views entertained by the court of appeals in cases within its final supervision will sometimes differ from those promulgated, under like circumstances, by the supreme court. But it is believed that in such instances the court of appeals will voluntarily yield its judgment to that of the higher tribunal. Something must always be trusted to the disposition of judges to act for the general harmony and good, as well as to their honesty and legal discrimination. Should direct contrariety of opinion arise *in the same case*, however, as counsel seem to fear, an appropriate remedy will undoubtedly be found to enforce the law as declared by the supreme court, and thus

vindicate both the interest of the suitor and the supremacy of this tribunal. But these thoughts are not pertinent to the specific question in hand; for however much uniformity of judicial decision may be desired, section 28 was not expected to insure such uniformity. This provision deals with legislation. It is *the laws* pertaining to the organization, jurisdiction, etc., of courts, also the legal *force* and *effect* of the judgments, not the *judgments themselves*, that are to be uniform.

We have now briefly considered all of the constitutional provisions upon which reliance is placed by relator and his learned co-counsel. We discover in the legislative act challenged no such inconsistency therewith as would justify us in holding it unconstitutional. Some of its features will doubtless prove objectionable in actual practice. But it is largely an experiment; experience may demonstrate its entire inutility; that it will suggest improvements is a matter of course.

Aside from the rule of construction that forbids courts from holding statutes void so long as a reasonable doubt of their validity remains, this or a similar measure is supported by direct constitutional sanction as well as by potent considerations of public and private justice. Section 6 of the Bill of Rights, already mentioned, not only guaranties to the citizen a remedy for every legal injury suffered, but also provides that such remedy shall be enjoyed *without delay.* It is an open secret that the reviewing branch of our judicial machinery has for years been unable to give this provision full force and effect. Upon the organization of this tribunal, it received a bequest of more than one hundred causes from the territorial court of last resort. The state's diversity of industries and its marvelous growth in population and wealth have caused a vast and unanticipated increase in the volume of judicial business; as one of the natural results, nearly three thousand cases have reached this court for review. And when the novel and perplexing character of a large part of this litigation is considered, it

is certainly not a matter of surprise that the court, despite diligent and earnest endeavor, has failed to keep pace with the rapid accumulations upon its docket. The annoyance and delay incident to this condition of affairs have amounted in many instances to a denial of justice. The gravity of the situation appealed strongly for some sort of legislative relief, if such relief were possible. And while incongruities in judicial organization and action are to be deplored, we find no excuse for relaxing any rule of construction in order to declare the statute before us void.

There is no evidence whatever in the act itself, or in the circumstances attending its adoption, of a legislative intent to detract from the dignity or standing of the supreme court. We cannot favor the supposition that the legislature may in the future directly or indirectly undertake to deprive this tribunal of its jurisdiction, appellate or original. When that body attempts, if it ever should, to interfere with the existence or supremacy of the court, or to change the nature of its jurisdiction and duties, or to render it an "idle and empty pageant," the court will undoubtedly decline to recognize such usurpation of authority and illegal action; but until that time arives, the discourtesy toward another branch of the government will not be committed, of indulging the presumption that a wilful effort may be made to thus impair the judicial system and lessen its usefulness. The supreme court might, by disregarding rules of construction, declare all acts of a particular general assembly void, and thus nullify its entire work; but it is highly unreasonable to surmise that this tribunal will ever be guilty of such revolutionary conduct. To suppose that either department of government will make the most vicious and illegal use possible of the powers conferred is to suppose a proceeding subversive of the government itself.

The numerous authorities cited by counsel have been carefully examined, but to attempt a critical analysis thereof would unnecessarily prolong this opinion. It is not pretended that our views are in strict harmony with all of the

able decisions referred to; they are, however, in the main not unsupported by authority, and we submit them in confidence, believing that, besides promoting the public good, they will be found well sustained by firmly established legal principles.

The demurrer to respondents' return or answer will be overruled.

*Demurrer overruled.*