MARTIN ET AL. v. SIMPKINS ET AL.

1. WRIT OF ERROR TO COUNTY COURT.

The writ of error is a constitutional writ of right from the supreme court to every final judgment of the county court; and, though subject to reasonable regulation, it cannot be abolished as to such judgments, nor can its scope or office be materially impaired while the constitutional provision guaranteeing it remains.

2. JUDICIAL PROCEEDINGS—JUDGMENT.

When a regularly constituted court of justice, clothed with authority to hear and determine a question of fact or a mixed question of law and fact upon evidence written or oral produced before such court, renders a decision affecting the material rights or interests of one or more persons or bodies corporate, such proceeding by the court is judicial, and the decision by the court is a judgment.

3. PROCEEDINGS UNDER ANNEXATION ACT.

The proceedings required to be instituted, carried on and consummated in the county court as the means of dissolving one municipality and annexing the same to another under the act of 1893, is a judicial proceeding, and the approval of the report of the annexation proceedings by such court is a judgment to which a writ of error will lie from the supreme court.

4. PARTIES ENTITLED TO WRIT OF ERROR.

Resident citizens and taxpayers of a municipality sought to be annexed to another under the act of 1893, have such an interest in the subject-matter of the annexation proceedings that they are entitled to a writ of error from the supreme court to review the judgment of the county court approving such proceedings.

*Error to the County Court of Arapahoe County.*

SPECIAL proceeding in the county court under the act of April 11, 1893, providing for the annexation of contiguous towns and cities. Session Laws of that year, p. 451. The act contains, among other things, the following:

"SEC. 2. A petition subscribed by not less than twenty-five electors who are taxpayers of such town, or fifty electors who are taxpayers of such city, existing under general laws, praying for the dissolution of such town or city, and the annexation of the same to the city existing under a special charter, may be filed in the office of the clerk of the county

court of the county in which the town or city existing under
general laws may be situated. The petition shall be accom-
panied by an affidavit of one or more of the petitioners, show-
ing that the subscribers are electors and taxpayers of such
town or city, and shall be *prima facie* evidence of the matters
therein set forth. Upon the filing of such petition the county
court shall make an order reciting the substance of the peti-
tion, and requiring the board of trustees of such town or the
city council of such city, existing under general laws, to
submit the question of such dissolution and annexation at
the next general election or at a special election of such
town or city, as hereinafter provided, to a vote of such of the
qualified electors of such town or city as have in the year
next preceding paid a property tax therein ; which order
shall be served by delivering a copy thereof to any member
of the board of trustees of such town, or of the city council
of such city, and the same shall be filed in the office of the
clerk and recorder of such town, or of the city clerk of such
city."

Then follow provisions concerning the enactment of an
ordinance for holding the election ; notice of election ; qual-
ifications for voting ; form of ballots ; manner of voting ;
canvassing the votes ; and also :

"SEC. 8. If a majority of the votes so cast shall be ' For
Annexation,' it shall be the duty of the clerk and recorder
of such town, or the city clerk of such city, to prepare a report,
which shall be signed by the mayor and attested by the clerk
and recorder of such town, or the city clerk of such city,
under the seal of such town or city, containing a copy of the
ordinance under which the question was submitted as afore-
said, and of the record of the proceedings of the board of
trustees of such town, or city council of such city in ascer-
taining and declaring the result of said vote ; and forthwith
to file the same in the office of the clerk of the county court
aforesaid. The court shall examine the report and hear any
evidence that may be offered concerning the regularity or
irregularity of the proceedings, and if satisfied that the pro-

ceedings are regular, shall approve the report. From and after the approval of the same such town or city previously existing under general laws shall be dissolved, and the territory then included within the boundaries thereof shall thereby be and become annexed to and part of the city existing under special charter."

" In the Matter of the Annexation of the Town of North Denver," the following, among other proceedings, were had in the county court:

### . " FINAL ORDER.

" The above entitled matter coming on to be heard this day by the court, upon the report of Leonidas L. Kemp, mayor, attested by J. H. McDonald, town clerk and recorder, of the town of North Denver, Colorado, and filed herein, the same being a report of certain proceedings had in pursuance of the order of this court made on the seventh day of June, A. D. 1894, in said matter ; and it appearing from said report that in pursuance of said order a special election was called and held in the town of North Denver aforesaid, on the seventeenth day of July, A. D. 1894, for the purpose of submitting and determining the question whether the town of North Denver aforesaid should be dissolved and the territory included therein annexed to the city of Denver aforesaid ; and that at said election forty-nine ballots were cast ' For Annexation ' and thirty-six ballots were cast ' Against Annexation,' and that the returns of said election were duly made and canvassed as required by law, with the above result; and it further appearing from the certificate of the town clerk and recorder of the town of North Denver aforesaid that due notice of said election was given, as by law provided ; and no further evidence being now submitted concerning the regularity or irregularity of said proceedings,

" It is therefore ordered, adjudged and decreed, that all proceedings in pursuance of said order of this court were and are regular and said proceedings and report should be and the same are hereby approved ; and that, by virtue of said

proceedings and of this order and decree, the town of North Denver aforesaid is dissolved, and the territory included within the boundaries of the town of North Denver aforesaid is annexed to and a part of the city of Denver; and that this order be entered this day *nunc pro tunc* as of July 26, 1894.

"By order of the court.

"OWEN E. LEFEVRE, Judge."

Plaintiffs in error sued out from this court a writ of error to review the proceedings of the county court in the matter of the annexation of the town of North Denver to the city of Denver, assigning numerous errors, and thereupon it was ordered that such writ be made a *supersedeas*. The defendants in error now file their motion to dismiss the writ of error and to discharge the *supersedeas* upon the following grounds:

"1st. That no writ of error lies under the law to review the final order entered herein by the court below.

"2d. That the law touching writs of error in other cases has not been complied with; no proper proceeding was instituted in the court below, and there is nothing before this court upon which it could under any circumstances pass in review.

"3d. Neither these plaintiffs in error, nor any or either of them, is entitled to the writ of error issued herein, or to maintain this proceeding on error."

Mr. J. E. ROBINSON, for plaintiffs in error.

Mr. F. A. WILLIAMS and Mr. J. C. HELM, for defendants in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The motion to dismiss the writ of error in this case calls for a further consideration of the "Act to Provide for Contiguous Towns and Cities to Become Annexed." See Session Laws, 1893, p. 451.

In *Mayor and Trustees of the Town of Valverde v. Shattuck,*

19 Colo. 104, certain proceedings of the county court under said statute were reviewed and reversed by writ of error from this court. There was no motion to dismiss or quash in the *Valverde Case*, nor was any objection to the review by this court interposed by either party. As counsel say, the writer of this opinion, during the argument of that case, " suggested a doubt whether the writ of error would lie to the order of the county court then complained of ; " but the doubt was whether such order or judgment was *final*. No doubt was entertained of the authority of this court to review that proceeding in some manner, at some stage. The court concluded to review the order complained of in that case, because in a certain contingency and in a certain sense it might be considered final. By the terms of the statute it is only in case a majority of the ballots cast are " for annexation," that the county court is required to take action after making the order requiring an election to be called. .

It is true, the statute does not provide for an appeal or writ of error to review the proceedings of the county court had or taken under its several provisions ; neither does it forbid such review. There is some force in the contention that the delay incident to a review of the proceedings by an appellate court may cause inconvenience. But objections on the ground of delay are not controlling. They may be urged in various kinds of judicial proceedings, and yet the necessity for review, in most cases, far outweighs such objections. The rights of parties are more important than haste ; hence, appellate tribunals are provided in our judicial system.

1. Our constitution provides : " Writs of error shall lie from the supreme court to every final judgment of the county court." The county court act provides : " Writs of error shall lie from the supreme court to every final judgment or decree of any of the county courts, and shall be prosecuted and disposed of in the same manner as writs of error to the final judgment or decree of the district court." Whatever may be the ordinary *status* of the writ of error in our juris-

prudence, it is certainly a constitutional writ of right from the supreme court to every final judgment of the county court; and, though subject to reasonable regulation, the writ cannot be abolished as to such judgments, nor can its scope or office be materially impaired while such constitutional provision remains. Const., art. 6, sec. 3; Gen. Laws, 1877, chap. 23, sec. 8; Gen. Stats., sec. 502; 1 Mills' An. Stats., sec. 1091; *People v. Richmond*, 16 Colo. 280; *Haley v. Elliott, ante* 379.

2. Counsel for defendants in error do not claim that the order approving the annexation proceedings in this case is not final; on the contrary, they claim that it is both final and irreversible; in short, that the order is not a *judgment.* Their contention is, that the words " every final judgment," as used in the constitutional provision above quoted, refer only to " such final judgments as may be rendered in ordinary actions at law, or suits in equity."

The approval of the annexation proceedings by the county court is, by the record in the present case, denominated an *order* instead of a *judgment.* In strict legal parlance, an order is a judgment, though the term is usually applied to some interlocutory decision by the court, rather than to its final judgment in an action or proceeding. In the present case, however, the order is expressly termed a " final order; " besides, its conclusion is in the usual phraseology of a final judgment,—" ordered, adjudged and decreed." But names and forms of words signify little. The material questions are : What was the real character of the proceedings now sought to be reviewed ? What was the essential nature of the court's " final order ? " Was the proceeding judicial ? Was the court's " final order " its final judgment in such proceeding ?

The line of demarcation between judicial and ministerial acts is not always easy of discernment; in fact, the distinction between such acts is often more arbitrary than real. Ministerial as well as judicial officers in the discharge of their official duties are required to interpret and apply the law to

the facts and circumstances before them. This much, however, may be safely said: When a regularly constituted court of justice is clothed with authority to hear and determine a question of fact, or a mixed question of law and fact, upon evidence, written or oral, to be produced before such court, and thereupon to render a decision affecting the material rights or interests of one or more persons or bodies corporate, such proceeding by the court must be regarded as judicial, and the decision by the court may properly be denominated a judgment.

According to Blackstone, " judgments are the sentence of the law, pronounced by the court upon the matter contained in the record." In *Cooper v. Am. Cent. Ins. Co.*, 3 Colo. 321, Mr. Justice Elbert, delivering the opinion of this court, said: " A judgment is the sentence of the law pronounced by a court of competent jurisdiction, as the result of proceedings instituted. It is a judicial act, and to be valid must be pronounced by the *court*, at a time and place appointed by law, and in the form it requires. In the case of *Skinner v. Beshoar*, 2 Colo. 385, it was held that error will lie to review what assumes to itself the force of an adjudication in law, although upon the face of the record it may want the essentials of validity." See opinion in the latter case by Mr. Justice Wells; also, Am. & Eng. Ency. of Law, 59.

In *Sloan v. Strickler*, 12 Colo. 181, which was a writ of error to review an order or decree of the county court in proceedings for the sale of the real estate of a deceased person, this court said: " Since the adoption of the constitution (art. 6, sec. 23) and the passage of the county court act (Gen. Laws, chap. 23, sec. 8), which went into effect June 20, 1877, there is no longer room for reasonable doubt that writs of error lie from the supreme court to every final judgment or decree of the county courts, including cases of this kind." See, also, *Unknown Heirs of Langworthy v. Baker*, 23 Ill. 484; *Schlattweiler v. St. Clair Co.*, 63 Ill. 449; *Peak v. People*, 76 Ill. 289.

The foregoing definitions and views are certainly compre-

hensive enough to include orders and decisions in special pro-
ceedings, as well as judgments in ordinary civil and criminal
actions, *provided*, such orders or decisions be made *by the
court* in a proceeding instituted and pending *before the court.*

3. The proceeding which the statute requires shall be in-
stituted, carried on and consummated, as the means of dissolv-
ing one municipality and annexing the same to another, is
unquestionably a special statutory proceeding as distin-
guished from an ordinary action at law, or suit in equity.
But is it a judicial proceeding? Or is it merely ministerial?
It is manifestly a proceeding *in the court* and *by the court.*
The proceeding is required to be commenced by filing a peti-
tion in the clerk's office of the county court. The petition
must contain certain requisites and must be accompanied by
an affidavit showing certain facts, which petition and affidavit
are made *prima facie* evidence of the matters therein set
forth. Upon the filing of *such* petition it is provided that
*the court* shall make an order providing for the submission of
the question of dissolution and annexation to a vote of prop-
erly qualified electors. See sec. 2.

The election having been held and the ballots canvassed,
if a majority of the votes cast be "for annexation," a report
of the same duly signed and attested is required to be filed
in the clerk's office of the *county court;* and thereupon *the
court* is required to *examine* the same and *hear* any evidence
that may be offered concerning the regularity or irregularity
of the proceedings, and, if satisfied that the proceedings are
regular, to *approve* the report. The effect of such approval
is that the town or city previously existing under general
law shall be dissolved, and that its territory shall become an-
nexed to, and a part of, the city existing under special char-
ter. See sec. 8.

A careful consideration of the proceedings thus provided
for compels the conclusion that they are judicial proceedings.
It is for *the court to examine and determine*, in the first in-
stance, whether or not a proper petition has been presented,
filed, and verified. The affidavit of verification is made

*prima facie* evidence only. This indicates that the facts therein stated are open to contradiction by parties interested in opposing the institution of the proceeding. The making of the order requiring the municipal authorities to submit the question of dissolution and annexation is clearly a judicial act. Before making the order, the court must *examine* and *determine* that the *petition is such* as the statute requires. So the requirement that the court shall *examine* the report of the proceedings of the town board or city council of the municipality sought to be dissolved and annexed, including the result of the election, and to *hear* evidence concerning the regularity or irregularity of the proceedings, clearly indicates that there must be a judicial examination and determination of the question whether the proceedings to dissolve one municipality for the purpose of annexing its territory to another have been properly conducted. So, also, the provision that the court shall approve the report, *if satisfied that the proceedings have been regular*, clearly implies that the court may not, upon such examination and hearing, be satisfied that the proceedings have been regular, and that, if not so satisfied, it should not approve the report.

Thus it appears that the question of dissolution and annexation is by the very terms of the statute committed to the decision of the county court upon matters to be *presented, examined, heard, considered and determined by such court.* The court is not only required to examine the documentary evidence presented, but to hear and weigh any oral testimony that may be produced, and thereupon find to its satisfaction whether the annexation proceedings have been regularly conducted in accordance with the law. Having done this, the court is to approve or disapprove the report concerning annexation. It must be conceded that, in a proceeding of this kind, as in every other of which it has jurisdiction, the court is bound to act according to the very right of the matter under the law applicable to the evidence. Surely such doctrine is applicable to the judicial forum, and familiar to the judicial mind. The very language of the statute, when

properly analyzed, clearly stamps the proceeding as judicial. The effect, also, which the statute gives to the approval of the report is, in every respect, a most important judgment. It is a judgment which dissolves a municipal corporation, deprives it of its franchises, annexes its territory to another municipality, and which may subject its inhabitants to increased taxation and other additional municipal burdens.

It may be, as counsel suggest, that proceedings under the statute might have been committed to some other tribunal or officer than the county court. But we cannot agree that it was the intention of the legislature that there should be no review of the proceedings of the county court in such cases; nor that the ends of justice and good government require that the action of such court in such cases should not be subject to review by the higher courts.

Counsel suggest the point that the statute does not expressly require the county court's approval of the report of the annexation proceedings to be in writing. This does not militate at all against the view that the proceedings before the court are judicial. Courts at *nisi prius* usually render their judgments orally. The entry of such judgments in writing is made by the clerk. Look through the codes of procedure, criminal and civil, and note how rarely the court is specifically required to render its judgments in writing! Examine the statutes concerning the duties of ministerial officers, such as assessors, treasurers, and the like, and observe how often they are specifically required to perform their official acts in writing, the substance and form of such acts being prescribed with more or less particularity. It would seem that the legislature, in framing certain sections of the annexation statute, considered that they were legislating for the guidance of judicial tribunals rather than ministerial officers.

4. Are plaintiffs in error entitled to prosecute the writ of error as issued?

From the record it appears that some of the plaintiffs in error were trustees of the town of North Denver during the time the annexation proceedings were instituted and carried

on in the county court, as well as when the writ of error was sued out from this court, and that all of them were resident citizens and taxpayers of such town and duly qualified electors under the provisions of the annexation act. Hence, their rights and interests may be materially affected by the judgment they seek to reverse. They appear now to prosecute this writ of error "in behalf of themselves and all other persons similarly situated and interested." As said by an eminent author and jurist: "It is, of course, essential that the person who seeks to prosecute an appeal should show that he is interested in the subject-matter of the controversy, and that his rights will be materially affected by the judgment, for he cannot be allowed to come in if the judgment will not affect his rights." Elliott's Appellate Procedure, sec. 133.

The prosecution of a writ of error is in many respects governed by the same principles as an appeal. It is an appeal in a large sense. In our opinion, plaintiffs in error have such an interest in the judgment rendered in this proceeding that they are entitled to prosecute this writ of error.

Other objections to the record, which have been urged as a ground for dismissing the writ of error, may be more properly considered on final hearing. The motion to dismiss the writ of error is denied.

*Motion denied.*