Bissell, P. J.,
delivered the opinion of the court.
This was a proceeding under chapter 19 of the code to revive a judgment. The petition contained all the requisite averments to entitle the petitioners to maintain the proceeding. From it and the proof it appears that in October, 1874, W. B. Daniels & Co., recovered a judgment for -1450 and costs against Russell & Swink, who were then copartners. In the November following an execution was issued, which was returned in February entirely unsatisfied. The proof *225 showed that at this time, and for many years afterwards, Russell & Swink were entirely solvent, and engaged in transacting a mercantile business at Rocky Ford. To render the controversy intelligible, something of the history of the original suit must be stated. During the inception of the matters which formed the subject of the original action, Russell & Swink sold to one Sweeney, on the order of Sweeney’s agent, Stewart, a lot of goods which were used in and about the care and management of a herd of cattle running in that vicinity. The goods were originally charged to Sweeney, although ordered by Stewart, as the foreman of the herd. There was some connection — though what, the evidence does not clearly disclose — between W. B. Daniels & Co. and Sweeney, in the ownership of. the cattle. Either Daniels & Co. were jointly concerned with Sweeney in the ownership at the time, or else negotiations were pending between the parties with reference to the stock, and the title thereto subsequently passed to Daniels & Co. This is of small moment in the present discussion. Russell & Swink had bought goods of Daniels & Co., for which they had not paid, evidently declining to settle on the theory that their claim against Sweeney should offset the Daniels & Co. account. The dispute culminated in an action by Daniels & Co. against Russell & Swink to recover the bill. This suit was brought in the county court, and in it Russell & Swink attempted to set up as an offset the claim which they had against Sweeney. The offset was disallowed, and judgment was finally entered in favor of Daniels & Co. for the amount stated. It is impossible to determine why the two accounts were not balanced, and under the record, as now presented, we cannot say whether the ruling of the court was based on the failure of Russell & Swink to show Sweeney’s authority to act on behalf of Daniels & Co., or whether the proof was such as to show that the transaction originally was one of a purchase and sale of goods between Sweeney and Russell & Swink, whereby Daniels & Co.’s promise to pay was the promise to pay the debt of another, and the proof was insufficient to *226 establish the liability. At all events the set-off was denied. After the entry of judgment, Russell & Swink and Daniels & Co. had some discussion concerning the situation of the two accounts and the judgment entered, and commenced negotiations looking to the satisfaction on their books by Russell & Swink of the claim against Sweeney, in consideration of the settlement of the judgment rvhich Daniels & Co. had obtained. Russell & Swink’s account against Sweeney was larger than that of Daniels & Co. against Russell & Swink. How far the negotiation was advanced by reason of any dealings then pending or concluded between Sweeney and Stewart and Daniels & Co. concerning the cattle is not clear; but according to the facts, as found by the court and stated in its findings, it was agreed between the parties that, if Daniels & Co. would not enforce the judgment which they had obtained against Russell & Swink, Russell & Swink would cancel their account against Sweeney, and would not appeal to the district court from this judgment, and further litigate the controversy on other evidence which they might procure concerning the matter. The court finds the agreement and its terms, and that it was on the condition that, if Daniels & Co. failed to notify Russell & Swink within ten days of their refusal to carry out the settlement, it should be taken as concluded, and Russell & Swink need concern themselves no further about the judgment. The court finds that no such notice was given. It further appears that the account against Sweeney for the goods sold was either charged off, or the claim allowed to lapse, and never enforced or collected from Sweeney, or presented to him for payment. On these facts the court held, as a matter of law, that there was no consideration for the agreement between the parties because no right of appeal lay from the probate court to the district court, and that the agreement not to prosecute the appeal constituted the sole consideration for the settlement. If it be concluded that the district court erred in respect of its determination of this particular question, or if it be concluded that there was still another sufficient consideration to uphold *227 the promise and support the settlement of the accounts, the judgment must he reversed.
Under the act concerning the revival of judgments, such causes are triable to the court which hears and determines the question of fact, to wit, whether the judgment remains unsatisfied in any part, and, on its conclusion respecting this proposition, renders the judgment to revive, or denies the petition.
The present claim is so stale and offensive in its antiquity that a judgment of revival should not be entered unless the court is clearly satisfied that the judgment remains unpaid. As against claims of such ancient origin, the presumption of payment is exceedingly strong, and less evidence is requisite to justify the court in refusing to revive so old a judgment than is necessary to entitle it to enter a judgment in an original suit between the parties. Mercantile houses like Daniels & Co. are not wont to permit judgments against solvent persons and solvent firms to remain unsatisfied and unenforced for a period of years, if their claim be just and collectible. It is quite possible that the present attempt to enforce this judgment may be the result of a change in the personnel of the old firm of Daniels & Co., and that the facts concerning the transaction are not within the knowledge and recollection of the firm, as.now constituted. We do not intend to hold that the absolute presumption of payment which arises as a matter of law after the lapse of the time which may be prescribed by some statute exists' in the present case, but simply that the length of time is such that the presumption will aid proof which may be more limited, perhaps, than would be absolutely necessary to entitle the court to render a judgment in an original action based on the same facts. There is considerable contrariety of opinion in the decisions as to what constitutes a bar in an action of this sort. Most states have a statute on the subject. Other states have established a rule of judicial construction which has been followed, so that it may be deemed settled. Yarnell v. Moore, 3 Cold. 173; Baker v. Stonebraker, 36 Mo. 338; *228 Angell v. Martin, 24 Kan. 334; Smithpeter v. Ison, 4 Rich. Law, 203. Colorado has no statute, and the only act which may be said to bear on it is section 197, Gen. Stats., 1883, which adopts the common law of England, in so far as it is applicable to questions not covered by positive legislation. Under this act it could not be adjudged that the conclusive presumption which follows the lapse of time may be indulged in. We have already suggested, however, if there be proof in the case of an agreement between the parties which can be held a sufficient consideration to uphold the compromise and prevent the enforcement of this very stale judgment, a court would naturally feel itself quite at liberty to regard the evidence in that direction as quite persuasive, and to regard with considerable indulgence any slight discrepancies concerning the terms of the alleged compromise.
We do not accept the court’s conclusions respecting the right of appeal. The matter is not one of any consequence to the profession, and what we decide concerning the right of appeal in 1874 is not likely to be a matter of any future interest to other litigants. It is not probable that any other case will arise, calling for a construction of the statutes on the subject. We shall therefore not discuss the question with that fullness which would be essential if we were establishing a precedent. It will be enough to refer to the decisions and the law, and to state our general judgment concerning the matter. Gen. Laws Territory Colorado, 1872, p. 105; same, 1874, p. 217 ; Rev. Stats. Colo. 1868, p. 527. These acts, together with the act of congress approved May 4,1870, which is referred to in the case of McClure v. Sanford, 3 Colo. 514, cover the matter of appeals, and jurisdiction of the probate and district courts of the territory. In general it may be said that the right of appeal originally lay from what was then termed the probate courts of the territory to the district court, and that the latter heard and tried the case in very much the same fashion as district courts now hear and determine such appeals when they are taken from our present county courts. The act of 1872 undoubtedly *229 gave the right of appeal in all cases. That of 1874 attempted to except the county of Arapahoe from the operation of the antecedent law, and to take away the right of appeal in that county. The law seems not to have been effectual for the purpose. The limitation upon the power of the territorial legislature to affect the rights granted in the organic act and the amendments thereto by congress was very early considered in the state. Cass v. Davis, 1 Colo. 43; McClure v. Sanford, supra; Stebbins v. Anthony, 5 Colo. 273. These adjudications lead us to conclude that at the time this judgment was rendered, in 1874, there was a right of appeal from the probate to the district court in Arapahoe county. The question as to the force and effect of the act of 1874 was of such great doubt that if, as the court found, Russell & Swink were asserting a right to appeal, which they agreed to forego in case the suit was adjusted, it was a contention for which there was a reasonable ground, and on which even lawyers might possibly differ ; so that the precise determination of this question is not absolutely essential to support our conclusions. We think, however, that the right of appeal existed. If it did not exist, there were reasonable grounds to believe it to exist; and, even though it might be ultimately adjudged that Russell & Swink did not have the right, yet the matter was involved in so much uncertainty that the agreement not to take an appeal might operate as a sufficient consideration to uphold the settlement of the disputed claim. Hewett v. Currier, 63 Wis. 386; Bellows v. Sowles, 55 Vt. 391; Miller v. Hawker, 66 Ill. 185 ; Clark v. Turnbull, 47 N. J. Law, 265; The Rector, etc., v. Teed, 120 N. Y. 583.
There is still another basis on which the court might well adjudge, should it find the requisite facts, that there was a sufficient consideration moving between the parties to make the agreement operative to estop Daniels & Co. to enforce the present judgment. The conclusion at which the trial court arrived concerning the preceding legal proposition may have led it not to weigh and consider the evidence with much *230 care with reference to the theory now under discussion. A detriment and a loss to one is as much a valuable consideration as a profit or a benefit to the other. There is evidence in the record which tends to show that, after this agreement was entered into between Russell & Swink and Daniels & Co., the former firm charged off the account against Sweeney, and never afterwards attempted to enforce or collect it. If this was done in pursuance of the agreement between the two firms, as contended for by Russell & Swink, and that firm ultimately lost its account against Sweeney by reason of their reliance on Daniels & Co.’s promise not to enforce the judgment against them, this of itself would be a sufficient detriment to Russell & Swink to furnish a good consideration for the promise of Daniels & Co., who would thereafter be estopped to enforce their judgment against the original debtors. It cannot be true that where a compromise of two claims is thus agreed upon between the parties, and one of the promisors thereby suffered the loss of another debt, the two promises shall not furnish a sufficient consideration, one for the other, and be operative to defeat the right of one of the parties to enforce his claim.
It is our conclusion that the right of appeal lay, and the executed agreement not to exercise it furnishes a sufficient consideration to make the compromise a valid one as against the Daniels & Co. judgment. We likewise conclude that, if the court shall find the facts concerning the disposition of the Sweeney claim to be as indicated bjr the present record, this conclusion would establish the existence of another sufficient consideration to uphold the settlement. The judgment will be reversed and the cause remanded.

Reversed.