Reed, P. J.,
delivered the opinion of the court.
The first contention of plaintiffs in error is that the district court had no jurisdiction ; consequently proceedings and decree of that court were void. We can fiud nothing in the record, abstract or brief of plaintiffs in error to show that any objection was made to the jurisdiction in the district court by the plaintiffs. They appeared, subjected themselves tofits jurisdiction without protest or suggestion even, participated in all pertaining to the trial, and the jurisdiction is first called in question in this court. Although a waiver or failure to raise the objection in the lower court would not confer jurisdiction where it did not exist by the law, yet good faith to the court would require that it should be raised, so that the court would have an opportunity of determining it. Counsel should not submit to the jurisdiction without question, adopt the finding and conclusion if satisfactory, and reject it if unsatisfactory.
*349 In section 11, art. 6, of the constitution, it is declared: “ The district courts shall have original jurisdiction in all causes, both in law and equity, and such appellate jurisdiction as may he conferred hy law.”
It is provided in acts of 1885, (Sess. Laws, p. 158): “Appeals may be taken to the district court of the same county, from all final judgments and decrees of the county court, except judgments by confession, by any person aggrieved,” etc.
In section 8 of the act of 1893, in regard to annexation, after stating the preliminary requirement, it is declared: “ The court [county court] shall examine the report and hear any evidence that may be offered concerning the regularity or irregularity of the proceedings, and if satisfied that the proceedings are regular, shall approve the report.”
Original jurisdiction to determine the regularity of the proceeding is conferred upon the county court. The statutes provide for a legal contest, to be determined upon the evidence, and the finding, either for or against the regularity, is a judgment, and as far as that court is concerned, is final. It may be that that court is the only one that has original jurisdiction of such a contest, but that is a question we are not called upon to decide. The legal character of the finding of the county court upon such contest is defined and placed beyond contest by Martin et al. v. Simpkins et al., 20 Colo. 438, where it is declared that such proceeding is a judicial proceeding, and the finding of the county court a final judgment, to which a writ of error will lie to the supreme court. The finding and defining the character of the result by the supreme court greatly simplifies the examination of the question.
When the act of 1893, concerning annexation was passed, the act of 1885, providing the appellate jurisdiction of the district court, was in force; and this class of cases not having been taken out of its provisions by special enactment, the provision is not repealed, either directly or impliedly ; nor is there any such incompatibility that both cannot stand.
*350 The judgment being final, as declared by the supreme court, and not being a judgment by confession, but by adjudication, an appeal will lie to the district court, as in other cases under the general statute. That the proceeding and review in the district court is by a trial de novo does not divest it of its appellate character, and we are clearly of the opinion that the district court had jurisdiction upon appeal; and under the decision of Martin v. Simpkins, the citizens and taxpayers, feeling themselves aggrieved, were legal parties to prosecute an appeal.
The language of the statute providing for annexation is peculiar : “ The court shall examine the report and hear any evidence that may be offered concerning the regularity or irregularity of the proceedings, and if satisfied that the proceedings are regular shall approve the report.”
The finding must, upon the trial, be a conclusion deduced from the law, the facts, and all the circumstances. In a close contest, any refusal of proper votes or receipt of improper votes might cause an irregularity; also any partisan action or bias of those having the election in charge that influenced the election and prevented a fair expression of the wishes of the majority of the legal voters would work an irregularity. The court, after a patient and exhaustive trial, concluded that the proceeding had been irregular. In some respects, he held the proceeding illegal. We have no means of knowing how far such conclusion was influenced by the law and how far by facts.
Section 5 of the act in regard to annexation, in plain and unmistakable language, prescribed the qualifications necessary to constitute a legal voter: First. “ The person offering the same shall be a duly qualified voter in the election precinct in which he offers to vote and entitled to vote in such precinct at said election.” Second. “ Shall have, in the year next preceding said election, paid a property tax in said town or city.”
The law is a special statute providing for such an election, and prescribing the qualifications of those entitled to partici *351 pate. While it must be strictly pursued, strict compliance with its provisions is all that can be legally required. It cannot be added to or made more onerous by provisions referring only to general elections.
The district court found that the votes of parties were refused because the voters were not registered. No registry was required by the statute. Registry was not necessary to render the person applying a properly qualified voter' in his precinct.
I have always regarded the fact of registry as an evidence of the proper qualification of the applicant to vote, as the conclusion of some former investigation. While it affords such evidence, it is not conclusive. The vote of a registered person may, upon proper showing, be legally refused. The law provides a course of procedure whereby a person not registered can compel the receipt of his ballot. Hence registry is not in this case a condition precedent to the right to vote, but only evidence of such right, where the vote is unchallenged. There being in the special act nothing to require registry, the refusal to receive the votes of those otherwise qualified under the law was illegal, and imposed a qualification and duty not required by the statute.
The statute in regard to taxpaying as a prerequisite to the right to vote is plain and unambiguous. It is: “ And in addition thereto shall have, in the year preceding said election paid a property tax in said town or city.” This of itself does not specify that it must have been the tax of the last preceding year, but later in the same section it affirmatively appears that the intention of the legislature was that it should be the tax of such year. The language is, “ That the person so offering to vote had paid such tax for such preceding year.” The court found from the evidence that parties not duly qualified by paying the taxes of the preceding year had been allowed to vote. Such being the fact, such votes were invalid, and, if sufficient in number, would work a serious irregularity, defeating the will of the legal majority.
It appears from the evidence that the special election was *352 held upon the same day as the general election, but was separate and distinct, and that the officers presiding and conducting such election were specially appointed for that purpose by the trustees in the ordinance providing for the election, and a place for holding such election, separate and apart from the general election, was designated. It is contended by counsel that the town trustees had no power to appoint special judges to hold such election. The general statute provides for the appointment of judges of election in each precinct of the county. The power and duty is conferred upon the county commissioners. Section 1272, Gen. Stats., is as follows: “Ail judges of election shall on being appointed hold their office for one year or until their successors are appointed, and shall serve at all special elections during their term of office.” That duty had been performed, and power to appoint was exhausted. The statute provides a method whereby the qualified voters present at any election may fill any vacancy, but I can find no statute authorizing either town trustees or voters to create a board. The power is impliedly negatived by the statute providing that the three appointees shall serve at all special elections. Our conclusion is that the trustees had no power to create a board of judges by ordinance or otherwise, and that the persons who conducted such special election, not having been legally appointed, had no power to act, and the election was void, irregular and illegal.
The ordinance authorizing the election, among its other provisions, contains the following: “Said ballots to be prepared in accordance with the provisions of an act of the general assembly of the state of Colorado, entitled ‘ An Act in Relation to Elections, Defining Offenses Against the Same and Prescribing Punishments Thereof,’ approved March 26 th, 1892.” This was an attempt to apply the Australian ballot law, when, by such act, the election to be held was specially exempted from the operation of that law: “ Sec. 2. This chapter shall not apply to any election for school officers held at any time other than a regular election for state, county or city officers, nor to any special election at which no *353 persons are to be voted for, for any city, county or state office.” The provision of the ordinance is also in direct conflict with section 6 of the statute in regard to annexation, which declares: “ All ballots cast in pursuance of this act shall be ‘For Annexation’ or ‘Against Annexation,’ and shall be deposited in a separate ballot box used for that purpose only.” The statute prescribes the only method in which the ballots could be prepared, — evidently two simple tickets, one for the other against annexation. There was nothing to which the ordinance for preparation of ballots could apply, and the attempt to apply the general election law could only result in confusion and an impediment amounting to an irregularity.
In the pleadings, bias, and an attempt on the part of the trustees and their appointees to illegally force and compel a result in favor of annexation, is strongly charged, and much evidence was taken to establish the charges and rebut them. Like all other questions of fact, where the evidence is conflicting, the finding of the district court is conclusive upon this. Whether such bias existed, and was carried to the extent of preventing a fair declaration of the wishes of the majority, was a question peculiarly within the province of the district court; and if the facts as charged were found to have existed, it would amount to an irregularity that would vitiate the election.
For reasons stated, we are clearly of the opinion that the election was irregular and void.
As a new election will undoubtedly be called, and the question again submitted, we have found it necessary to discuss the different questions presented by counsel to prevent the occurrence of former errors and irregularities.
The judgment of the district court will be affirmed.

Affirmed.