Argued 10 February; decided 3 March; rehearing denied 7 April, 1902.

### IRVING PARK ASSOCIATION *v.* WATSON.

[67 Pac. 945; 16 Am. & Eng. Corp. Cas. (N. S.) 320.]

NATURE OF COLLATERAL DEPOSIT OF CORPORATE STOCK.

1. An assignment and delivery of shares of corporate stock by a debtor as security for a debt is usually a pledge, and the instrument here under consideration is a pledge, not a mortgage: *Jacobs* v. *McCalley*, 8 Or. 124, distinguished.

RIGHT OF STOCKHOLDER TO CONTRIBUTION—EQUITY.

2. A pledgor of a certificate of stock to the corporation by which it was issued, as a security for the unpaid subscription therefor, cannot, when sued for the foreclosure of the pledge, require the balance of the stockholders to be made parties and to contribute to the indebtedness of the company, for the right of the corporation against the pledgor is quite independent of the rights that may exist between stockholders themselves.

FORECLOSURE OF PLEDGE—DEFENSES.

3. Such a pledgor cannot defend by showing that the corporation was organized to purchase land, for which it was supposed that it paid a certain sum, but in fact paid less, as some of the stockholders received commissions and rebates from the owner of the land, for which they ought to account, the matter being wholly between the corporation and such stockholders.

From Multnomah: JOHN B. CLELAND, Judge.

This is a suit by the Irving Park Association (a corporation) against Virginia Watson to foreclose an alleged pledge of personal property. The facts are, in substance, that in April, 1890, the defendant and nineteen others contracted for the purchase of 600 acres of land near Portland for the sum of $130,000, payable $3,000 down and the balance in installments. To effect and carry out the purchase and the subsequent sale of the land, the plaintiff corporation was organized with a capital stock of $130,000, divided into 20 shares of $6,500 each, whereupon the defendant and the other parties interested with her in the purchase subscribed for one share each, and received from the corporation a certificate of stock stating that it was

assessable as follows: $1,875 on receipt of the certificate, $1,650 one year from April 28, 1890, $1,500 and $1,475 in two and four years thereafter, together with interest on deferred payments at the rate of 7 per cent per annum, payable quarterly, and one twentieth of such taxes as may be assessed against the real estate owned by the association. The land was thereafter purchased and deeded to the corporation, and it executed its note, secured by a mortgage on the property, to the vendor, for the balance due on the purchase price. The plaintiff subsequently levied and collected assessments from its several stockholders amounting in the aggregate to $100,000, which was applied on its indebtedness. Prior to March 16, 1897, the defendant, as such stockholder, paid all assessments due on her stock except $1,779.49, and on that day, in consideration of such deferred payment, she made, executed, and delivered to the corporation the following instrument in writing:

"$1779.49.                    Portland, Oregon, March 16, 1897.

Eighteen months after date, without grace, we or either of us promise to pay to the order of the Irving Park Association, at the office of Ladd & Tilton, in this city, the sum of seventeen hundred and seventy-nine and forty-nine hundredths dollars, payable in gold coin of the United States of America, and not otherwise, with interest thereon from December 14, 1896, until paid at the rate of seven (7) per cent per annum, the first payment of interest to fall due on March 31, 1897, and thereafter every three (3) months, and if not so paid, the whole of said note to become due and collectible at the option of the holder thereof, for value received.

And we hereby assign and transfer to the Irving Park Association and deposit with it, as collateral security for the payment of the above promissory note and the expenses that may accrue thereon, the following personal property, of which we are the sole owners, the same being at our own risk and expense, to wit: Certificate numbered 38, for one (1) share of stock in the Irving Park Association, the face value of which is sixty-five hundred dollars.

It is hereby understood and agreed that the said Irving Park Association is not to be held responsible for any injury or loss to said property arising from the act of God, robbery, fire, or flood.

All securities received hereunder may be held and applied by said company to secure said indebtedness or liability of any nature whatsoever, existing, or which may hereafter arise, from us to said Irving Park Association; in view of the nonpayment of the said promissory note or the interest thereon when due, we hereby appoint and constitute said company or its treasurer our attorneys in fact, irrevocable with the power of substitution, and we hereby authorize and empower them, or either of them, or their substitute or substitutes, to sell at any time after said promissory note, or any interest thereon, shall become due, at public or private sale, and with notice to us, the whole or any part of the property or collaterals deposited with or held by said company, and to deliver the said property sold to the purchaser or purchasers thereof, and to apply the proceeds of such sale to the payment of said promissory note, with interest and other expenses, together with five (5) per cent commission on sale, and collection of said collateral, and should any suit be brought upon said note, to enforce the collection thereof, to pay all costs of suit and counsel fees incurred therein.

If, after the sale of said property and the application of the proceeds as aforesaid, there should be a balance of indebtedness still unpaid, we hereby promise to pay on demand such balance in gold coin to said company; but in case said promissory note and all other indebtedness to said Irving Park Association be paid, with interest and other expenses, as above stipulated, then this agreement shall be void, and all property held as security shall be returned to us; and all provisions of law providing for sale of pledges are hereby expressly waived. Should any such sale be made, said attorneys in fact, or either of them, directly or in the name of any other person, shall have the right to purchase.

Witness our hands and seals this March 16, 1897,

                                    VIRGINIA WATSON,   [SEAL.]''

Default having been made in the payment of the amount due, the plaintiff commenced this suit to foreclose its lien upon the certificate of stock so assigned and delivered to it as collateral security. The complaint is in the usual form, and the answer sets up several defenses: (1) That a court of equity has no jurisdiction, and that plaintiff's remedy is by sale of the certificate of stock in the manner provided in the instru-

ment of writing referred to; (2) that the balance of $30,000 still due from the plaintiff on the land purchased by it is owing by the defendant and five other subscribers to the stock of plaintiff, who are each wholly insolvent and unable to pay any part thereof; that fourteen of the remaining stockholders are solvent, and able to contribute their share to the payment of said indebtedness; and the answer therefore prays that they be made parties to the suit, and required to contribute their proportionate share of such indebtedness; and (3) that $90,000, and not $130,000, was the true purchase price of the land, and the difference of $40,000 was, without the knowledge of the defendant, charged and received as rebates and commissions from the owner of the land by some of the other stockholders, who should be made parties to this suit, and required by a decree to account to the corporation for the sums so received by them. A demurrer was sustained to the answer, and, defendant declining to plead further, a decree was entered in favor of the plaintiff as prayed for in the complaint, from which the defendant appeals.       Affirmed.

For appellant there was an oral argument by *Mr. Benjamin B. Beekman,* with a brief over the names of *Watson & Beekman,* and *Robert G. Morrow,* to this effect:

The instrument sued on assigns and transfers the certificate of stock as a security for the debt, and provides with great particularity for a sale and an application of the proceeds towards the satisfaction of the debt without suit.

A transfer of personal property as mere security for a debt, no matter in what form or by what instrument, is a chattel mortgage, and gives no other rights or remedies than the law allows to mortgagees of chattels: Jones, Chat. Mtgs. (3 ed.) §§ 4 and 5; 5 Am. & Eng. Ency. Law (2 ed.), 947, and note 3; *Millhiser* v. *Pleasants,* 118 N. C. 237 (23 S. E. 969-970); *Graham* v. *Blinn,* 3 Wyo. 746 (30 Pac. 446); *Campbell* v. *Woodstock,* 83 Ala. 351 (3 So. 369-370); *Carpenter* v. *Snelling,* 97 Mass. 452; *Taber* v. *Hamlin,* 97 Mass. 93; *Smith* v. 49, *etc.*

*Min. Co.* 14 Cal. 242; *Cooper* v. *Brock,* 41 Mich. 488; *Langdon* v. *Buel,* 9 Wend. 79, 83; *Atwater* v. *Mower,* 10 Vt. 75; *Frankhouser* v. *Fisher,* 54 Kan. 738; *Read* v. *Horner,* 90 Mich. 152 (51 N. W. 207); *Woodward* v. *Crump,* 95 Tenn. 369; *Barrow* v. *Paxton,* 5 Johns. 258 (4 Am. Dec. 354).

Provisions for the sale of personal property and the application of the proceeds towards the satisfaction of the debt secured, incorporated in a chattel mortgage, exclude the jurisdiction of courts of equity to entertain foreclosure proceedings, under the laws of this state: Hill's Ann. Laws, § 3838; *Jacobs* v. *McCalley,* 8 Or. 124.

*On Motion for Rehearing.*

*Mr. B. B. Beekman,* for the motion, urged these points:

The text writers cited in the opinion of the court favor the construction therein adopted on account of the inherent difficulty of mortgaging shares of stock, and base their views, not upon the character of the instrument by which the security is effected, but solely upon the nature of the personal property given as security for the debt. Shares of stock, though somewhat intangible in their nature, are personal property, and there is nothing in their intrinsic character to prevent a mortgage of them by a proper instrument evidencing such intention. In *Hembree* v. *Blackburn,* 16 Or. 153, 156 (19 Pac. 73), a similar instrument was construed to be a chattel mortgage. There as here the instrument contains all the attributes of a chattel mortgage, and the only material difference lies in the fact that the instrument there construed covered ordinary goods and chattels, while the present instrument embraces shares of stock.

That shares of stock may be the subject of a chattel mortgage, we cite the following in addition to the numerous authorities cited in appellant's brief: Cook, Stock and Stockh, § 464; 5 Am. & Eng. Ency. of Law (2 ed.), 975, and cases cited in notes 3 and 4; *Megear* v. *Etiwanda Water Co.* 76 Cal. 537 (9 Am. St. Rep. 245).

At common law all forms of personal property could be mortgaged, and, in the absence of statutory limitation upon the forms of property that may be mortgaged, any transfer of any personal property as security for debt should be construed to be a chattel mortgage, if so intended by the parties thereto, and such intention is to be ascertained, in the first instance, from the form and nature of the instrument by which the security is effected. The instrument in litigation shows such intention. The nature of the personal property covered should not be permitted to defeat that intention. The logical effect of the construction adopted by the court is that shares of stock, on account of their peculiar nature, cannot be mortgaged, though the instrument of transfer may have all the attributes, both in form and substance, of a chattel mortgage, and clearly evidences an intention to mortgage the same.

For respondent there was an oral argument by *Mr. Wm. Torbert Muir,* with a brief over the name of *Fenton & Muir,* to this effect:

A court of equity has jurisdiction to decree a sale of personal property pledged as security: Hill's Code, § 414; *Thompson* v. *Marshall,* 21 Or. 171, 177-179 (27 Pac. 957) ; 2 Daniel, Neg. Instr. (3 ed.) § 833; *Boynton* v. *Payrow,* 67 Me. 587; *Freeman* v. *Freeman,* 17 N. J. Eq. 44; *Strong* v. *National Mech. Bkg. Assoc.* 45 N. Y. 718-720.

In some cases it is held that the remedy of the pledgee of negotiable paper is an action at law to enforce the obligation. This doctrine is not applied to stocks deposited as collateral: 2 Daniel, Neg. Instr. (3 ed.) § 833.

An agreement between pledgor and pledgee that collateral may be sold summarily upon default, does not exclude a sale by judicial decree: 1 Hill's Code, §§ 414, 422; *Thompson* v. *Marshall,* 21 Or. 170-177 (21 Pac. 957) ; *Coffin* v. *Chicago, etc. Co.* 67 Barb. 337-339.

Fraud or mismanagement of directors or the payment of excessive prices for property purchased is no defense to a subscription for stock: 1 Cook, Corp. (4 ed.) § 188; *People* v. *Bar-*

*rett,* 91 Ill. 422-423, 431-432; *Chetlain* v. *Republic, etc. Co.* 86 Ill. 220, 221; *Merrill* v. *Reaver,* 50 Iowa, 404; *Cook* v. *Hopkinsville, etc. Co.* 32 S. W. 748; *Hards* v. *Platt, etc. Co.* 46 Neb. 709; *Hornaday* v. *Indiana, etc. Co.* 9 Ind. 263.

MR. CHIEF JUSTICE BEAN, after stating the facts as above, delivered the opinion of the court.

1. The first contention for the defendant is that the instrument sought to be foreclosed is a chattel mortgage, and under Act 1866, p. 688, § 2 (Section 3838, Hill's Ann. Laws), as interpreted in *Jacobs* v. *McCalley,* 8 Or. 124, can be foreclosed only in the manner stipulated, since plaintiff has possession of the property; while for the plaintiff the contention is that the transaction was a pledge, and not a mortgage. Speaking generally, the distinction between a mortgage and pledge of personal property is that in the former the thing pledged must be delivered to the pledgee, while in the latter the possession may remain with the mortgagor. It is often difficult to determine whether a given transaction is a mortgage or a pledge when possession of the property is delivered to the creditor. But the general rule is that an assignment and transfer of shares of stock in a corporation by a debtor as security for a debt is a pledge, and not a mortgage. Indeed, it is said by Mr. Cook that "it is difficult to ascertain from the cases how shares of stock may be mortgaged; and a few early decisions, which held certain transactions to be mortgages, would to-day be held to be pledges": Cook, Stock and Stockh, § 464. Mr. Edwards, in his work on Bailments (2 ed.), § 219, says: "Shares of stock in a corporation are now, and have been for many years, habitually pledged as collateral security for money loaned. The pledge is made by a direct transfer of the scrip in writing, with an authority to effect a transfer in due form on the books of the corporation; and in his note for the sum loaned the borrower further authorizes the pledgee to sell the stock. The effect of the transaction is not a mortgage, but a pledge of the stock to secure the prompt payment of the money borrowed. On account of its incorporeal nature, property in stocks cannot

be otherwise delivered. The delivery of the scrip alone is not considered sufficient, because it does not of itself enable the pledgee to sell the stock and apply the proceeds to pay the debt. * * The contract of pledge is entirely consistent with the owner's right as a stockholder. Until the pledge is rendered available by a foreclosure, he remains a member of the corporate body, interested in its management." And Mr. Jones, in his work on Pledges (section 153), says that the transfer of the legal title to the stock to the pledgee is not inconsistent with the existence of a pledge, but, on the contrary, it cannot generally be pledged without a written transfer of the title, because it is not capable of manual delivery; and "in general it may be said that any transfer as collateral security of shares in a corporation, made in the ordinary form of an indorsement of a certificate, or by delivery of it with a power of attorney to make a transfer upon the books of the corporation, or by an actual transfer upon the books, is a pledge, and not a mortgage; and it is immaterial in this respect whether such transfer appear to be absolute or is expressed to be made as security." Within these authorities we think the transaction between the plaintiff and the defendant as set out in the pleadings constituted a mere pledge of the stock, coupled with a right to sell it in case of default; and such a construction was given by this court to practically a similar transaction in *State ex rel.* v. *Smith,* 15 Or. 98 (14 Pac. 814, 15 Pac. 137, 386).

2. The other questions require but a brief notice. The defendant is sued upon a written contract or agreement for the payment of money secured by the deposit of her stock as collateral security. Upon this contract the plaintiff has a right to maintain a suit without regard to the solvency or insolvency of the other stockholders, and there is no right of contribution between stockholders which can be enforced therein.

3. The other matter is a question between the corporation and the stockholders. If there is a right of action against them to recover the money which it is alleged they received as commission or rebates from the vendor of the land, it rests in the corporation, and cannot be the subject of adjudication in a

suit to enforce payment of an indebtedness from the defendant to it. From these views it follows that the decree of the court below must be affirmed, and it is so ordered.        AFFIRMED.

Argued 4 March; decided 31 March, 1902; rehearing denied.