[No. 3889.]

## ELLIS v. GIBBONS ET AL.

1. PARTY—*Who Is.* Mrs. Ellis, having recovered a judgment against Gibbons, levied her execution upon certain shares of corporate stock, as the property of Gibbons. Gibbons had previously pledged the stock, but had obtained a decree entitling him to redeem from the pledge. Subsequent to the levy of Mrs. Ellis' execution, Gibbons assigned the stock to Bordeleau, and Gibbons and Bordeleau interposed a motion in the case in which Mrs. Ellis had recovered judgment, to quash her levy. No objection was taken below to the appearance of Bordeleau in this motion. Upon this ground, and because the relief which he sought by his motion was precisely the relief which would have been awarded to him if he had formally intervened, with success, he was regarded and treated, upon error brought, as a proper party below; though it was said that he should have proceeded by bill in equity, or by petition in intervention. (447, 448)

2. APPEAL AND ERROR—*Where Error Lies—Final Judgment.* An order quashing the levy of an execution upon corporate stock is of the same effect as a decree obtained by an equitable suit, or by petition in intervention; and one who in this irregular manner obtains such relief, will not be heard to question the right of his adversary to a review of the order, upon error. Levy upon corporate stock standing upon the books of the corporation in the name of another than the execution defendant. Also, cotemporaneously with the levy, garnishee process served upon the corporation, and an answer showing that the execution defendant was entitled in equity to certain shares in the corporation. An order quashing the levy operates *prima facie* as a discharge of the garnishee and is therefor reviewable upon error by the express provisions of the code (Mills' An. Code, sec. 141, Rev. Code, sec. 157). (458-460)

3. EXECUTION—*Equitable Interest in Corporate Stock Leviable.* Sections 4167, 4172, Mills Stat. (Rev. Stat., secs. 3617, 3622), and sec. 140, Mills Code (Rev. Code, sec. 156) are to be considered as *in pari materia.* The interest of the pledgor in corporate stock may be taken in execution in the manner prescribed by these provisions of the statute, even though nothing appears in the books of the corporation to show such interest. (461-464)

The stock is leviable, even though the pledgor's right is evidenced by an equitable decree, from which an appeal still lies. (464, 465)

The shares are not, after such decree, *in custodia legis.* It is not necessary for the sheriff to disturb the pledgee's possession of the stock certificate, nor need notice of the levy be given to the execution defendant. (466)

Complying with the statute such possession as is possible, and such as is contemplated by the statute, is secured. (463)

The proceedings taken by the creditor set forth, and held to show a substantial compliance with the statute. (465)

*Error to Denver District Court.* HON. GEORGE W. ALLEN, Judge.

MESSRS. BICKSLER & BENNETT, MESSRS. BARTELS & SILVERSTEIN, MESSRS. DANA & BLOUNT for plaintiff in error.

MR. T. J. O'DONNELL, MR. J. W. GRAHAM, MR. CAN-
TON O'DONNELL for defendants in error.

On petition for rehearing.  Petition denied.

*Per curiam.*

The facts necessary to an understanding of this case are
substantially as follows:

Mrs. Ellis (formerly Mrs. Prince), plaintiff in error,
made a loan to Mr. and Mrs. Gibbons, taking as security
therefor a trust deed on real estate.  On default of payment,
foreclosure proceedings were had, the trust deed being treated
as a mortgage, resulting in a deficiency judgment against the
Gibbonses for $9,500, dated February, 1905.  At and subse-
quent to the time of the foreclosure proceedings aforesaid,
Joseph Gibbons claimed to be the owner of 3,333 shares of
the capital stock of The Joseph Gibbons Mining & Milling
Company, which stood on the books of that corporation in the
name of one John F. O'Connor:  Gibbons had brought legal
proceedings against O'Connor to recover the stock, which re-
sulted in a decree against Gibbons, but, upon appeal to the
Supreme Court, said judgment was reversed and the cause
remanded to the District Court for a new trial, the Supreme
Court holding that Gibbons had a right to show that the bill
of sale of said stock, which appeared to be absolute, was in
fact a mortgage or a pledge—*Gibbons v. O'Connor et al.,* 37
Colo. 96, 86 Pac. 94, 11 Ann. Cas. 323.  Upon the second
trial, the District Court, on June 6 or 7, 1907, rendered judg-
ment in favor of Gibbons—finding that the transfer of stock
to O'Connor was a pledge to secure payment of an indebted-
ness for money borrowed; that Gibbons was the owner of
said stock, subject to the lien of O'Connor—and gave Gibbons
ninety days in which to redeem the shares of stock by pay-
ment of said indebtedness, amounting at that time to about
$5,000, payment to be made to O'Connor or into the registry
of the court.  The decree required O'Connor to transfer the

certificates to Gibbons or his assigns, and ordered The Joseph Gibbons Company and Sullivan, its president, to transfer the shares of stock on the books of the company "upon the assignment and transfer thereof by the said John F. O'Connor as he, the said Joseph Gibbons, may require or direct," and further provided that in case O'Connor, within thirty days, bring the shares of stock into the registry of the court, duly assigned to Gibbons, to be delivered upon payment of the amount due into the registry of the court for O'Connor's use, and thereupon Gibbons fail to perform the decree by paying the sum of money awarded, the right of redemption as fixed in the decree should be at an end, and the cause stand dismissed. On June 7th, Mrs. Ellis caused an execution to be issued on her deficiency judgment against the Gibbonses, under which, on June 10th, a levy was made or attempted to be made by the sheriff upon the interest of Gibbons in the mining stock in question. A bill of sale is found in the record, by which it appears that on August 2, 1907, Gibbons sold the mining stock to Joseph Bordeleau "in consideration of $5 and other valuable considerations," and which, for identification of the stock, refers to the aforesaid litigation and decree in *Gibbons v. O'Connor*, and authorizes and directs the clerk of that court to deliver the stock to Bordeleau, and directs the secretary of the mining company to make the transfer on the corporate books and issue certificates to Bordeleau. September 9th, while the sheriff was advertising the stock for sale under said levy, Gibbons filed a motion, in the *Ellis-Gibbons* action, to quash the levy and the sheriff's return thereof. Bordeleau joined in said motion. September 10th, the motion to quash was sustained. To review this judgment or order quashing the levy, the case is brought here by writ of error.

1.    Prior to the transfer of this cause by the Supreme Court to this court, defendants in error filed a motion, the purpose of which was to dismiss and recall the writ of error, for the reason, as therein alleged, that the Supreme Court was without jurisdiction to hear and determine the matters brought

up by the writ, the theory of the movers being that the order of the trial court quashing or setting aside the levy was not a final judgment, and for that reason was not reviewable by writ of error. The Supreme Court denied the motion, with leave, however, to defendants in error to again raise the same on final hearing. We are therefore required, at the threshold, to determine a jurisdictional question. Section 406 Mills' Ann. Code provides that writs of error shall lie from the Supreme Court to every final judgment of any court of record. Section 221 defines a judgment as "the final determination of the rights of the parties in the action or proceedings." Section 141 provides that writs of error may be prosecuted from any final judgment or order in garnishment proceedings, as in other civil cases.

From what has already been said, it will be seen that neither Mr. nor Mrs. Gibbons had any apparent interest in the stock at the time they filed their motion to quash or recall the levy, as they had parted with their interest therein by sale to Bordeleau. Bordeleau was not a party to the Ellis-Gibbons foreclosure proceeding, nor to the Gibbons-O'Connor litigation, relative to the mining stock, and was not made a party thereto, unless considered a party by virtue of the proceedings taken herein to quash the levy. His appearance is in the nature, though not in the form, of an intervention. But in as much as no objection was made in the court below to his joining with Gibbons in the motion to quash the levy, we shall assume, for the purposes of this case, that he was a proper party to the proceedings—as he was, in fact, the real party in interest, and the only moving party ostensibly having a pecuniary interest in the stock. Notwithstanding the form in which this proceeding is brought, it is obvious that the judgment or order quashing the levy, for all practical purposes, meant to Bordeleau precisely what a judgment in his favor as intervenor, or in an equity proceeding brought to restrain the sale of the stock would have meant, and from such a suppositious judgment, clearly, an appeal would lie. If it be

conceded that the ruling of the trial court upon the motion to quash the levy is not, strictly speaking, a final judgment or decree, as the phrase "final judgment" is ordinarily understood, nevertheless, it undoubtedly has the force and effect of a final judgment, in that it has finally disposed of the controversy involved, to-wit, the lien of the execution acquired or preserved by the levy, and the more important question as to whether the interest of Gibbons in the stock was subject to levy and sale under execution at all. Although under the same execution, another levy on the same property might possibly be made, the priority of the lien acquired by the levy in question would probably be lost, and plaintiff in error thereby deprived of a substantial right. But it cannot be assumed that the court did not hold that the stock was not subject to the execution, and that ruling *res adjudicata* as against another levy. From the nature of the case, the doubtful and difficult questions presented, and the valuable property rights involved, it is evident that a summary proceeding such as this, where the issues are not made by appropriate pleadings, is not well adapted to secure a fair trial and determination of such issues. We think the proceeding should have been in equity, or perhaps by formal intervention in Bordeleau's behalf, but inasmuch as he has seen fit to join with Gibbons in the motion to quash the levy, and thereby submit questions which should have been raised in a more formal proceeding, and has secured an award in his favor, in the nature of, and having the force and effect of a final judgment, he may not successfully dispute the right of his adversary to have the same reviewed by writ of error. We will regard the substance of the proceeding, rather than its form, and treat it accordingly.

, As was said in *Balfe v. Rumsey, et al.*, 55 Colo. 97, 133, Pac. 417, 419, Ann. Cas. 1914C 692: "The motion which plaintiff in error did file must be treated as equivalent to, and a substitute for, a bill in equity, and the judgment of the court * * * reviewable here."

If the authority of the trial court to quash a levy is purely discretionary, and, as contended for by defendants in error, not subject to review for error or abuse of discretion, either by writ of error, certiorari, or otherwise, then it is manifest that a trial court might, through error as to the law, or by the grossest abuse of its discretion, altogether prevent a judgment creditor from collecting the judgment.— *Pontius v. Nesbit,* 40 Pa. St. 309.

Furthermore, the record shows that in connection with the usual statutory proceedings incident to levy upon stock in a corporation, garnishment writs in aid of the execution were served upon The Gibbons Consolidated Mining & Milling Company, O'Connor (the pledgee), and others, to which answer was made by the president of the corporation, in which, in response to the interrogatories, as well as to the request made by the sheriff for information as to any stock held by Gibbons, or in trust for him, the president of the company stated that there was no stock standing on the books of the company in the name of Gibbons, nor of anyone else to his use or in trust for him, but further stated that a decree of court had been rendered in the *Gibbons-O'Connor* suit aforesaid, and the substance of the decree, to-wit, that it was there decided that Gibbons was the owner of stock standing on the books in the name of O'Connor; that O'Connor was pledgee; that the officers of the company were by said decree required to reissue the stock to Gibbons, or as he might direct, upon redemption as provided, and asserted the willingness of the company to comply with the decree. Upon this showing, the final order of the court quashing the levy, *prima facie,* at least, operated as a discharge of the garnishees, and such an *order* is made reviewable by the special provisions of section 141, Mills' Ann. Code. That provision of the code is not relied on by plaintiff in error, but, without expressly holding that of itself it is sufficient to sustain the writ, we think it may well be considered in connection with all other matters in aiding to resolve, in favor of the plaintiff in error, the

serious doubt raised by decisions of the Supreme Court in *Good v. Martin,* 2 Colo. 292, and *Rockwell v. Dist. Ct.,* 17 Colo. 118, 121, 29 Pac. 454, 31 Am. St. 265, as to whether the judgment assailed may be reviewed upon writ of error. The rule is well established that where doubt exists as to the right of review, such doubt should be resolved in favor of a review, where substantial rights are involved. If we have erred as to jurisdiction, an adequate remedy is provided.

The following additional authorities support our conclusion that the ruling of the trial court here under consideration is so far a final judgment as to be reviewable: *Corning v. Ryan,* 3 Colo. 525; *Daniels v. Daniels,* 9 Colo. 133, 140, 10 Pac. 657; *Hutchinson v. McLaughlin,* 15 Colo. 492, 25 Pac. 317, 11 L. R. A. 287; *Martin v. Simpkins,* 20 Colo. 438, 38 Pac. 1092; *Tomboy v. Dist. Ct.,* 23 Colo. 441, 445, 48 Pac. 537; *Standley v. Mfg. Co.,* 25 Colo. 376, 379, 55 Pac. 723; *State Bank v. Plummer,* 46 Colo. 71, 102 Pac. 1082; *Smith v. McCourt,* 8 Colo. App. 146, 157, 45 Pac. 239; *McKercher v. Green,* 13 Colo. App. 271, 58 Pac. 406; *Mackaness v. Long,* 85 Pa. 158, 162; *Ins. Co. v. Sturges,* 33 N. J. Eq. 330; *Baker v. Pierson,* 5 Mich. 458; *Bristol v. Brent,* 35 Utah 213, 99 Pac. 1000. We are aware that some of the decisions are based on code provisions not altogether like our code.

2. Another point raised on behalf of defendants in error is that the interest of Gibbons in the stock was not subject to levy and sale on execution. This contention seems to be predicated upon the assertion that the only right which Gibbons had in the stock was an "equity of redemption" or "the equitable right to redeem the stock" from the pledge to O'Connor; that Gibbons was not the owner of the stock; that his rights were inchoate only. The latter position can best be stated by quoting from the brief of defendants in error:

"The rights of Gibbons were inchoate; they began with and by reason of the facts stated in the opinion in 37th Colo., but they were not in full existence or operation during the time the battle pending between him and O'Connor waged,

and the decree did not, of itself, restore them to such full existence or operation until and unless its terms were complied with."

We cannot yield to the statement contained in the foregoing quotation. The actual ownership of the stock at all times by Gibbons, notwithstanding the pledge thereof to O'Connor, did not arise from nor begin with the decree or judgment of the court. Whatever right Gibbons had, the law gave. The court simply declared it. Gibbons prevailed in his action because of the fact, as found and determined by the court, that the transfer of the stock from Gibbons to O'Connor, although absolute in form, and so appearing upon the books of the corporation, was, nevertheless, a pledge, and to be so construed. In effect, the decree declares that while the legal title passed to the pledgee, it was held by him for the benefit of the pledgor, in whom the general property still remains—*Wilson v. Little*, 2 N. Y. 443, 51 Am. Dec. 307; *Irving Park Ass'n. v. Watson*, 41 Or. 95, 67 Pac. 945; *Mitchell v. Roberts* (C. C.), 17 Fed. 776, 5 McCreary 425; *Gay v. Moss*, 34 Cal. 125, 132; *Dungan v. N. J. Mut. Ben. L. Ins. Co.*, 38 Md. 242, 252; 31 Cyc. 791, and cases cited.

Nor do we agree with counsel's contention that because corporate stock is a chose in action, and Gibbons' interest therein a mere right to redeem it from the pledge which is also a chose in action, a levy under execution could not be made thereon. Under the provisions of our statute—section 993, Mills' Ann. Stats.—shares of stock in a corporation are deemed to be personal property. This doubtless applies to the shares or interest which the stockholder has in the assets of the corporation, and not only to the certificates, which are held to be mere tokens or evidence of the shares or interest.— *Mountain Water Works v. Holme*, 49 Colo. 412, 428, 113 Pac. 50; *City and County of Denver v. Estate of Charles M. Hobbs, et al.*, — Colo. ——, 144 Pac. 874, handed down December 7, 1914; *People ex rel. v. Goss & Phillips Mfg. Co.*, 99 Ill. 355, 363. The statute also provides that such rights

and shares of stock may be levied on and sold under execution, and prescribes the method.—Sections 4167 and 4172, Mills. Ann. Stats.   The Civil Code also provides that the credits and effects, *choses in action,* and other personal property, of a judgment debtor in the possession or under the control of any third person may be levied upon and taken under execution, to the same extent and in the same manner as they may be taken under attachment and garnishment proceedings.—Section 140, Mills' Ann. Code.   We think the provisions of the statute and of the code are to be considered *in pari materia,* and, as such, applicable to the circumstances of this case so far as the levy is concerned, and that even though the stock be considered as a chose in action, as held by many courts, and the right of Gibbons an equity of redemption, nevertheless, it is subject to seizure under execution in the manner provided by the statutes and the code.   The shares of stock, or interest, although personal property, are not capable of manual delivery, and therefore cannot be taken into the actual possession of the officer.   This fact explains the reason for the statutory provisions as to levy, somewhat analogous to a levy upon interests in real estate.   In this case, as there was no stock standing in the name of Gibbons on the company books, no showing on said books that any of the stock standing on the books in the name of a third person was held "in trust for or to the use of" said Gibbons, it was impossible for any officer of the corporation to certify from its books as to the true ownership of the stock sought to be levied upon; but it is evident from the record that not only the president of said corporation, but the sheriff, had information of the decree of the court, and the real interest of Gibbons as therein declared, and we think the garnishment proceedings and the answers made by the corporation to the interrogatories therein, were appropriate in aid of the execution, and that, altogether, the levy as made was valid.   In *Metzler v. James,* 12 Colo. 322, the question as to whether an equity of redemption in personalty is subject to levy and sale under

execution was discussed. In that case an attempt had been made to levy upon personal property consisting of a stock of drugs of which the mortgagee had the legal title and possession. The court said:

"The maintenance of the second proposition depends upon whether an equity of redemption in personalty is subject to levy and sale under execution. It is not subject thereto at common law."

It is there shown that an equity of redemption in personalty may be subjected to levy and sale under execution, by the use of the appropriate provisions of the statute and code. We think that case is ample support for our conclusion that the equity of redemption of Gibbons as pledgor of the stock was subject to levy and sale under execution. If plaintiff in error failed in any respect to follow the course pointed out, that failure is not in evidence, nor does it appear that she is barred from still pursuing the necessary course. The stock, however, not being capable of manual delivery, it was not necessary, nor possible, for the sheriff to take physical possession thereof. It was not necessary for him to disturb the actual possession of the pledgee of the certificates of stock. Such possession as was possible, and as the law contemplates, was secured by the sheriff by virtue of compliance with the provisions of the statute and the code. In this connection, we quote the language of Mr. Justice Dickey in *People ex rel. v. Goss & Phillips Mfg. Co.*, 99 Ill. 355, 363, having under consideration a levy upon capital stock under execution:

"The property of a stockholder consists of his right to a share in the net assets of the corporation, proportionate to the number of shares to which he has title. He has not, personally, a right as such shareholder, to the custody or manual possession of any part of such assets. The corporation has the custody of the whole, and holds possession of his share for him. His title is evidenced by his stock certificates. This title can be passed from him to another only by transfer thereof upon the stock books of the corporation. The cor-

poration holds possession of each share of each shareholder in whose name the stock stands on the books of the corporation. The possession of the corporation as to the share of each stockholder, is, in one sense, the possession of the shareholder, and is the only possession which a shareholder can lawfully have, and is the only possession which any grantee of any shareholder can acquire; and such possession by a vendee of a shareholder can only be obtained by a transfer of the stock to him *upon the books* of the corporation. Until that transfer be made, the possession of the corporation is the possession of him in whose name the stock stands upon the books. The certificate of stock does not constitute property in the assets of the corporation. * * * When the sheriff has exhibited his execution, and on demand has received from the corporation, by virtue of his execution, a certificate of the shares standing in the name of the execution debtor, from that moment the possession of the corporation becomes, in fact, the possession of the sheriff, or rather a possession for the sheriff, in whom the title to the stock, by virtue of such actual levy, is, for the time, invested. The sheriff then has all the possession which the shareholder had before the levy. By giving the certificate provided for, * * * the corporation, in substance, agrees to hold possession for the sheriff," etc.

Under the joint provisions of the statute and the code, it appears to us that an equity of redemption in corporate stock may be levied upon and sold under execution with like effect as an equity of redemption in real estate may be sold under execution, by compliance with the statutory requisites. The decisions of courts of different states are in hopeless conflict on this question, and citations thereto would be of slight benefit.

3. We do not regard the fact, that at the time the levy herein was made, the time for an appeal from the decision of the court in the *Gibbons v. O'Connor* suit had not lapsed, as important, in the absence of any contention or showing that an appeal had been taken or writ of error prosecuted which

would operate as a supersedeas. The levy could take nothing that did not belong to Gibbons, the execution debtor. The assertion that in view of the litigation, the questionable character and amount of Gibbons' interests in the pledged stock, and the possibility of an appeal or writ of error, would, in case of forced sale, result in a sacrifice of such interest because no one would buy, may be, and doubtless is, persuasive, and, for some purposes, should be considered; but we think that fact is not conclusive of the right to sell.

4. Defendants in error complain of the levy and the return made by the sheriff on the execution, pointing out certain alleged defects therein. A careful scrutiny of the manner of the levy, including the garnishment proceedings, leads us to the conclusion that the provisions of the statute were substantially complied with, and that the return of the sheriff correctly recites the levy made by him. Long before Bordeleau purchased the stock from Gibbons, the sheriff had delivered to the president of the corporation a copy of the execution, with a certificate that pursuant thereto he levied upon and seized all the interest or shares in said corporation belonging to Gibbons, and in response to the sheriff's request, and the interrogatories in the garnishment writ, the president of the corporation had furnished the sheriff with certificates and affidavits, stating the number of shares which the court had decided were held in trust by O'Connor for the use of Gibbons, and these, with the sheriff's return, when filed in court, recited accurately and in great detail all the pertinent facts concerning the stock. Whatever rights Bordeleau has in the stock, it must be considered, for the purpose of this hearing, he took with knowledge or notice of the levy. It is also urged that no notice was given Gibbons of the attempted levy upon the mining stock. We have no statute which in terms requires notice to the defendant in execution prior to levy of the writ.—*Victor Inv. Co. v. Roerig,* 22 Colo. App. 257, 124 Pac. 351. Failure to give notice of the levy to the execution debtor was not fatal.

5.   It is further urged that the stock was *in custodia legis,* and therefore not subject to levy.   We think it was not *in custodia legis* nor *in gremio legis* at the time of the levy, granting that it had been so situated prior to the decree.   As we have heretofore said, all matters in issue as to the ownership of the stock were settled by the decree.   That litigation was at an end.   The duty of the court in respect thereto had been performed.   Neither the court nor any officer thereof was in possession of the stock.   The corporation was in possession of the shares for Gibbons and his pledgee.   O'Connor was in possession of the certificates, but what interest he had in the stock was held by him in trust for Gibbons, although coupled with an interest in himself to the extent of the debt for which it was pledged.   By virtue of the decree, the parties might have used the clerk of the court, or its registry, as a medium of exchange of the redemption fund for the certificates.   They were not required to use either, and there is no evidence that they did.   There is no conflict, and no apparent possibility of conflict, between the court having jurisdiction of the execution, and the court that had exercised its jurisdiction in deciding the controversy as to the ownership of the stock.   For that reason, the numerous authorities cited by the eminent counsel for defendants in error in his persuasive brief, involving conflicts between state courts and federal courts, or different state courts, are not controlling, if in point at all, in considering the question as to whether the property was in custody of the law.   It was said in *Joseph v. Baldridge,* 43 Mo. App. 333, at 337:

"Goods are not in possession of the law simply because there is some litigation, touching their true ownership, pending in the courts."

*A fortiori,* it may be said that property is not in the custody of the law merely because there has been some litigation touching its ownership.

In deciding the questions discussed in this opinion, we have sought to avoid a decision on any matter, that, by be-

coming the law of the case, may embarrass the court on a new hearing or trial of this, or any other appropriate proceeding, in determining the relative rights of all parties interested in the stock the subject of this controversy. While we hold the levy valid, and that it seized any interest in the stock belonging to Gibbons, the execution debtor, we do not decide what that interest was, nor what interest Bordeleau acquired by his bill of sale. *Prima facie,* that instrument is an absolute transfer of the stock. It may, in fact, be a mere pledge, as was the bill of sale from Gibbons to O'Connor. Counsel, we think, suggest that such is, or may be, its true character, and if so it is conceivable that Bordeleau may be substituted for, or take the same position as O'Connor, with regard to the stock, and for that reason, or some other equitable reason, be entitled to priority over the lien of the execution creditor, to the extent of his investment. We gather from the briefs that at some time subsequent to the levy, that investment was approximately $5,000, but there is no proof that he paid anything. The condition of the record is such that we feel constrained, in reversing the judgment, to remand the cause in such form that the property rights of all the parties may be determined upon their merits, and after a full hearing.

Judgment reversed and cause remanded for further proceedings in conformity with the views herein expressed. The district court is directed to vacate the order quashing the levy.

*Reversed and Remanded.*